1  MICHAEL A. LAURENSON (SBN: 190023)
   NICOLE C. HARVAT (SBN: 200469)
2  GORDON & REES LLP
   Embarcadero Center West
3  275 Battery Street, Suite 2000
   San Francisco, CA 94111
4  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
5
   Attorneys for Defendants
6  THE REGENTS OF THE UNIVERSITY OF
   CALIFORNIA (erroneously sued herein as
7  INSTITUTE OF GOVERNMENTAL STUDIES
   AT THE UNIVERSITY OF CALIFORNIA AT
8  BERKELEY) and NICK ROBINSON

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11  KEITH GALIANO,                          )  CASE NO. C07 05557 MJJ
                                            )
12              Plaintiff,                  )  **DEFENDANTS THE REGENTS'
                                            )  AND NICK ROBINSON'S
13     vs.                                  )  MEMORANDUM OF POINTS AND
                                            )  AUTHORITIES IN SUPPORT OF
14  INSTITUTE OF GOVERNMENTAL STUDIES AT    )  MOTION TO DISMISS
    THE UNIVERSITY OF CALIFORNIA AT         )  (FRCP 12(b)(1) and (6))**
15  BERKELEY, an unincorporated association, NICK )
    ROBINSON, DOES 1-5, inclusive          )  Accompanying Documents:
16                                          )  NOTICE OF MOTION; PROPOSED
                Defendants.                 )  ORDER
17  _____)
                                               Date: February 26, 2008
18                                             Time: 9:30 a.m.
                                               Courtroom: 11, 19th Floor
19                                             Judge: Hon. Martin J. Jenkins

20

21                 I.    **INTRODUCTION**

22        Plaintiff Keith Galiano is an alumnus of the University of California at Berkeley who

23  essentially alleges that he was unconstitutionally "shushed" while using the library at the

24  University's Institute of Governmental Studies ("IGS"). He alleges that this shushing violated

25  his federal and state constitutional rights and constituted threatening conduct under California's

26  Bane Act. Plaintiff's Amended Complaint must be dismissed in its entirety pursuant to Federal

27  Rules of Civil Procedure 12(b)(1) and (6) for lack of subject-matter jurisdiction and failure to

28  state a claim upon which relief can be granted, for a number of independent reasons.

-1-

*(left margin)* Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    First, while plaintiff names the IGS as a defendant, the Court may take judicial notice of

2    the fact that the IGS is a unit of UC Berkeley, and therefore the proper legal entity is The

3    Regents of the University of California.[1]  The Regents, a State entity, enjoys sovereign immunity

4    under the Eleventh Amendment from the claims asserted.  The Regents is also not considered a

5    "person" under the statutes pled, 42 U.S.C. section 1983 and California Civil Code section 52.1.

6    Accordingly, plaintiff's claims against the IGS must be dismissed.

7    Nor may plaintiff proceed against Robinson individually.  Because there is no

8    constitutional right to talk to other patrons in a library on a university campus, plaintiff cannot

9    make out a free speech claim.  Moreover, the IGS library may, without violating the Equal

10    Protection Clause, selectively enforce valid rules related to its use.  Because plaintiff has not

11    alleged a violation of any clearly established law, Robinson is therefore entitled to qualified

12    immunity.  Finally, Robinson's alleged conduct is not sufficiently threatening as a matter of law

13    so as to violate the Bane Act.

14    ## II.    FACTUAL BACKGROUND

15    ### A.    Facts Alleged in the Amended Complaint

16    Plaintiff alleges that, on July 16, 2007, while using the IGS library reading room at the

17    UC Berkeley campus, he asked another patron to be quiet, causing the library director, Robinson,

18    to inform plaintiff that the library preferred that patrons address such concerns to the library

19    staff.  Plaintiff interrogated Robinson concerning the grounds for his request, causing Robinson

20    to ask plaintiff to leave or the police would be called.  Plaintiff alleges that he delivered an

21    "appropriate epithet," then left.  Amended Complaint ("AC"), ¶¶ 13-15.[2]

22

23    [1] The Regents is a constitutionally-created public corporation which administers the University
of California. *Campbell v. Regents of the Univ. of Calif.*, 35 Cal.4th 311, 317 (2005); Cal. Const.,
24    art. IX, § 9(a).  One of its constitutionally-vested powers is "the power to sue and to be sued" on
behalf of the University of California.  Cal. Const., art. IX, § 9(f).
25

26    [2] When plaintiff returned to the library several days later, Robinson pointed him out to campus
police, who arrested and jailed plaintiff on an allegedly "erroneous" outstanding warrant. AC at
27    ¶¶ 16-17.  No campus police are named as defendants and the Amended Complaint makes no
claims based on their conduct.  Another IGS employee is alleged to have subsequently confirmed
the existence of the library's "no direct address" policy, and, as a result, plaintiff alleges that he
28    has refrained from further use of the library out of fear of retaliation. *Id.* at ¶ 18.

**B.    Facts of Which the Court May Take Judicial Notice**

Pursuant to Federal Rule of Evidence 201, Defendants request that this Court take judicial notice of the following facts:

1.    The Institute of Governmental Studies (IGS) is an Organized Research Unit of the University of California at Berkeley. *See* http://www.igs.berkeley.edu/about_igs/overview.html.

2.    An Organized Research Unit, also called a Research Center or Institute, is a unit of the University of California at Berkeley similar to an academic department which is dedicated solely to research. *See* http://research.chance.berkeley.edu/main.cfm?id=4.

### III.    LEGAL ARGUMENT

**A.    The Regents is Not Subject to Suit Under the Claims Asserted**

**1.    The Regents Enjoys Sovereign Immunity**

"Under the Eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988). "[T]he University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment." *Jackson v. Hayakawa*, 682 F.2d, 1344, 1350 (9th Cir. 1982); *accord Armstrong v. Meyers,* 964 F.2d 948, 949-950 (9th Cir. 1992)("The Regents is an arm of the State for purposes of section 1983 and 11th Amendment.") Eleventh Amendment immunity extends to claims under state law. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 121 (1984).

Accordingly, here, plaintiff's claims against a unit of the University of California at Berkeley, the IGS, are barred by the Eleventh Amendment.

**2.    The Regents is Not a "Person" Under the Statutes Pled**

42 U.S.C. section 1983 prohibits any "person" from depriving any citizen of the United States "of any rights, privileges or immunities secured by the Constitution. 42 U.S.C. § 1983. The Ninth Circuit has held that The Regents is not a "person" within the meaning of section 1983. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-3-

1    Accordingly, here, the IGS, a unit of the University of California at Berkeley, is not a

2    "person" subject to suit under 42 U.S.C. section 1983.

3    Similarly, California's Bane Act prohibits any "person or persons" from "interfere[ing]

4    by threats, intimidation, or coercion," "with the exercise or enjoyment by any individual or

5    individuals of rights secured by the Constitution or laws of the United States." Civ. Code,

6    § 52.1(a). California law mirrors federal law in holding that the State, and thus the University of

7    California, is not a "person" within the ambit of a particular statute unless expressly included

8    within the definition of that term. *See, e.g., Calif. Medical Assn., Inc. v. Regents of the Univ. of*

9    *Calif.*, 79 Cal.App.4th 542, 551 (2000) ("the University of California is a 'public entity' (Gov.

10   Code, § 811.2) and, therefore, not a 'person' within the meaning of the Unfair Practices Act").

11   Here, the Bane Act contains no definition of the term "person" as used therein, and thus,

12   because not expressly included within the ambit of the statute, the IGS, a unit of the University

13   of California at Berkeley, is not a "person" under the Act.

**B.    Plaintiff's Federal Claims Against Robinson Must Be Dismissed**

**1.    The Complaint Fails to Allege a Violation of Free Speech Rights**

16   Plaintiff's free speech claims are based on his assertion of a non-existent right to talk in a

17   library. All of the speech on which plaintiff bases his claims – his request that the other patron

18   quiet down, his argument with Robinson regarding the appropriateness of the library's policies,

19   and his uttering an epithet to Robinson – occurred in the IGS library reading room. *See* AC at ¶

20   12. Plaintiff was not prohibited from addressing other patrons outside the library, nor was he

21   "retaliated" against, for example, for writing a letter of complaint to the library regarding its

22   policies. His claims, therefore, rest on a supposed right to engage in speech in the library.

23   As the United State Supreme Court stated in *Carey v. Brown*, 447 U.S. 455, 470-471

24   (1980), "no mandate in our Constitution leaves States and governmental units powerless to pass

25   laws to protect the public from the kind of boisterous and threatening conduct that disturbs the

26   tranquility of . . . public and other buildings that require peace and quiet to carry out their

27   functions, such as courts, libraries, schools and hospitals." Plaintiff's claim of a right to talk in

28   the library, free from the intrusion of "shushing" librarians, is meritless.

-4-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Federal appellate courts, including the Ninth Circuit, have applied "forum analysis" to

2   cases in which plaintiff's claim a violation of their free speech rights in government-owned

3   libraries. *See e.g., Faith Center Church Evangelistic v. Glover*, 480 F.3d 891 (9th Cir. 2007);

4   *Kreimer v. Bureau of Police*, 958 F.2d 1242 (3d Cir. 1992). That analysis recognizes that "[t]he

5   Constitution . . . does not guarantee that all forms of protected speech may be heard on

6   government property. The Government, no less than a private owner of property, has power to

7   preserve the property under its control for the use to which it is lawfully dedicated." *Faith*

8   *Center*, 480 F.3d at 907 (quotation omitted). Forum analysis has divided government property

9   into various types of fora: public fora (those, like public parks, that by tradition have been

10   devoted to assembly and debate), designated public fora (those that the government has

11   intentionally dedicated to expressive conduct), limited public fora (those that the government has

12   intentionally opened for the use of certain groups for certain limited purposes), and nonpublic

13   fora. *See id.* at 907-08. The Ninth Circuit has held that libraries are a "limited public forum."

14   *Id.* at 908.

15    "Restrictions governing access to a limited public forum are permitted so long as they are

16   viewpoint neutral and reasonable in light of the purpose served by the forum." *Faith Center*, 480

17   F.3d at 908. Further, in a limited public forum "the government is free to reserve access to the

18   forum for certain groups or for the discussion of certain topics ... . Access may not be restricted,

19   however, if the rationale for the restriction is the specific motivating ideology or the opinion or

20   perspective of the speaker." *Id.* at 911. "In the case of a limited forum, constitutional protection

21   is afforded only to expressive activity *of a genre similar to those that the government has*

22   *admitted to the limited forum. . . .* Other activities need not be tolerated." *Kreimer*, 958 F.2d at

23   1261-62 (quotation and citations omitted, emphasis original).

24    While *Faith Center* involved a room reserved specifically for public meetings, the instant

25   case involves the distinct "forum" of a library reading room. In cases involving such library

26   facilities, courts have held that the purpose for which the library has been opened to the public

27   justifies the government's imposition of strict limits on speech. "A school library, no less than

28   any other public library, is a place dedicated to quiet, to knowledge, and to beauty." *Board of*

-5-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   *Education v. Pico*, 457 U.S. 853, 868 (1982). "Its very purpose is to aid in the acquisition of

2   knowledge through reading, writing and quiet contemplation. Thus <u>the exercise of other oral and</u>

3   <u>interactive First Amendment activities is antithetical to the nature of a library</u>." *Kreimer*, 958

4   F.2d at 1261 (emphasis added).[3] Thus, in *Julian-Bey v. Crowley*, 2000 U.S. Dist. LEXIS 14071,

5   *17 (W.D. Mich. 2000), the court held that an outright ban on talking in a prison law library did

6   not violate Constitution because it was "reasonably related to the legitimate penological interest

7   in maintaining a quiet law library for those inmates seeking to do legal research and prepare

8   cases."

9        Given the nature and purpose of the IGS library, the speech restrictions about which

10  plaintiff complains are entirely reasonable. It is, for example, reasonable for the University to

11  require that patrons make requests for quiet through library staff, rather than engaging other

12  patrons directly – conduct that could lead to disputes and disruption. Furthermore, it is

13  reasonable for the library to insist that the quiet of the reading room is not a proper place for

14  patrons to argue with staff over library policies. It is also reasonable for the library to exclude

15  patrons who disturb the tranquility of the reading room by issuing "appropriate epithets" – AC at

16  ¶ 14 – as if any epithet in a library reading room could ever be "appropriate." None of these

17  "oral and interactive First Amendment activities" are of a type to which the IGS library is

18  dedicated. *Kreimer*, 958 F.2d at 1261. Plaintiff has no Constitutional right to engage in them

19  there and the University has no obligation to tolerate them there.

20       Because plaintiff has not alleged a violation of his free speech rights, he also cannot make

21  out a claim of retaliation based on the exercise of protected speech.

22       **2.    The Complaint Fails to Allege a Violation of Equal Protection Rights**

23       Plaintiff's equal protection claim is based on his allegation that IGS' policy "does not

24  apply to all persons equally, and no such rule has ever been invoked against any person other

25  _____

26  [3] Plaintiff's assertion that the IGS library "is a place of conspicuous political speech" (AC at ¶
    12) does not alter the nature or purpose of the public forum. He cites instances in which the
27  library has been used for presentations by invited speakers or library staff. Those are irrelevant
    to the issue of the "government's intent in making the forum available for *public* use." *Faith*
28  *Center*, 480 F.3d at 908 (emphasis added). The University's sponsorship of a recital by Cecilia
    Bartoli at Zellerbach Auditorium does not entitle plaintiff to jump on stage and sing.

1   than plaintiff." AC at ¶ 29. Because plaintiff does not allege discrimination based on any

2   protected classification that would call for heightened scrutiny, this is a so-called "class of one"

3   case, and plaintiff must show that he "has been intentionally treated differently from others

4   similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook*

5   *v. Olech*, 528 U.S. 562, 564 (2000); *Jercich v. County of Merced*, 2006 U.S. Dist. LEXIS 94030,

6   *28 (granting motion to dismiss equal protection claim).

7       "Under the rational basis test, there is a strong presumption of validity; government

8   actions are valid so long as there is a legitimate government interest." *Jercich*, 2006 U.S. Dist.

9   LEXIS 94030, at *28 (citing *Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1185 (9th Cir.

10   2004) and *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1999)). Furthermore, "[s]elective

11   enforcement of valid laws, without more, does not make the defendants' action irrational."

12   *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (affirming denial of equal

13   protection claim). Thus, the Ninth Circuit in *Freeman* agreed that city personnel did not act

14   "arbitrarily and capriciously" in denying the plaintiff's dance permit application for a lawful

15   reason (namely, high crime in the neighborhood), even though the plaintiff contended that other

16   bars in high crime areas obtained permits. *Id.*; *see also Jercich*, 2006 U.S. Dist. LEXIS 94030 at

17   *32 ("Though Jercich alleges selective enforcement, the County Defendants had a rational basis

18   for their actions: he was in violation of various codes.").

19       Plaintiff's equal protection claim fails as an initial matter because it does not allege that

20   defendants "intentionally" discriminated against him or that there were any other persons

21   "similarly situated" to plaintiff whom defendants treated differently. Rather, plaintiff's

22   Amended Complaint simply alleges that defendants had not previously invoked their "policy."

23       As a further, independent ground for dismissal, the Amended Complaint does not – and

24   indeed cannot – allege that defendants acted irrationally without a legitimate interest. To the

25   contrary, it is well-established that a university may regulate the use of its facilities and "preserve

26   such tranquility as the facilities' central purpose requires." *Souders v. Lucero*, 196 F.3d 1040,

27   1045 (9th Cir. 1999). Regulating tranquility is all the more necessary in a library, which "is

28   quintessentially 'a place dedicated to quiet, to knowledge, and to beauty,' ... and whose "very

-7-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  purpose is to aid in the acquisition of knowledge through reading, writing and quiet

2  contemplation." *Faith Center, supra,* 480 F.3d at 909-10.  Thus, a prison regulation banning

3  some inmates, but not other inmates with special agreements or library staff, from talking in a

4  law library has been held not to violate equal protection rights.  *Julian-Bey, supra,* 2000 U.S.

5  Dist. LEXIS 14071 at *17-18.  Like plaintiff here, Julian-Bey did not allege that he was a

6  member of a suspect or quasi-suspect class.  Applying the rational relationship test, the court

7  found that the regulation rationally furthered the interest of a quiet library while still allowing

8  inmates to receive needed legal assistance.  *Id.* at *18.

9  Given defendants' legitimate interest in maintaining order in the library, their request that

10  plaintiff bring any complaints he may have about noise to the library staff is entirely rational and

11  cannot form the basis of any alleged equal protection violation.

12  **3.  Robinson is Entitled to Qualified Immunity**

13  As an additional ground for dismissal, because plaintiff does not allege a violation of any

14  "clearly established law" of which a "reasonable person" would have known, as demonstrated

15  above, Robinson is entitled to qualified immunity.  *Mitchell v. Forsyth,* 472 U.S. 511, 525-526

16  (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a

17  defendant pleading qualified immunity is entitled to dismissal before the commencement of

18  discovery."); *Cohen v. San Bernardino Valley College,* 92 F.3d 968, 973 (9th Cir. 1996)

19  ("government officials ... are entitled to qualified immunity from civil liability when their

20  conduct does not violate clearly established statutory or constitutional rights of which a

21  reasonable person would have known").  The standard is one of "'objective legal

22  reasonableness,' rather than good faith, precisely in order to "permit the defeat of insubstantial

23  claims without resort to trial.'" *Behrens v. Pelletier,* 516 U.S. 299, 308 (1996) (quoting *Harlow*

24  *v. Fitzgerald,* 457 U.S. 800, 819 (1982)).

25  Here, because there is no clearly established right to talk to other patrons in a library on

26  the campus of the University of California, and because the library has a right to selectively

27  enforce valid rules related to its use, Robinson is entitled to qualified immunity from plaintiff's

28  claims against him in his individual capacity.

-8-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**C.    Plaintiff's State Bane Act Claim Against Robinson Must Be Dismissed**

The California legislature enacted Civil Code Section 52.1 (also known as the Bane Act) "to stem a tide of hate crimes." *Austin B. v. Escondido Union Sch'l Dist.*, 149 Cal. App. 4th 860, 882 (2007) (citation omitted). As previously noted, the Act prohibits any "person or persons" from "interfere[ing] by threats, intimidation, or coercion," "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Civ. Code, § 52.1(a). The Act specifically provides that "[s]peech alone is not sufficient to support an action brought pursuant [to the Act], except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code § 52.1(j).

Since plaintiff does not allege that Robinson touched him or physically interfered with him in any way, he must allege speech which would create a reasonable fear of violence against him. However, plaintiff alleges only that Robinson "told plaintiff he had to leave or police would be called" (which he subsequently hyperbolically characterizes as "ejecting him from the library") and "falsely report[ed] him as having engaged in criminal conduct." AC at ¶¶ 14, 37-39.[4] This is not speech which would create a reasonable fear of violence against plaintiff and does not represent the kind of threatening speech which is covered by the Bane Act. *See Rabkin v. Dean*, 856 F. Supp. 543, 552 (N.D. Cal.1994) (dismissing Bane Act claim with prejudice where allegations were "insufficiently threatening"). Even if it was, a citizen's report of suspicious conduct to the police cannot form the basis for a Bane Act claim because it is entitled to absolute immunity under California Civil Code section 47(b). *See Hagberg v. Cal. Fed. Bank FSB*, 32 Cal.4th 350 (2004).

---

[4] It is unclear whether plaintiff's allegation that defendants "condition[ed] resumption of library use on adherence to the rule against direct address" is based on conduct by Robinson. Even if it is, the result would be the same, as that conduct is also not sufficiently threatening to constitute a violation of the Bane Act.

-9-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Furthermore, as a separate and independent reason for dismissal, as discussed above,

2  plaintiff has not pled a violation of any valid constitutional right. *See Austin B.*, 149 Cal.App.4[th]

3  at 883 (affirming nonsuit to Bane Act claim absent evidence defendant caused or attempted to

4  cause loss of constitutional right); *accord Thompson v. County of Los Angeles*, 142 Cal.App.4[th]

5  154, 173 (2006) ("Without any violation, there is no conduct upon which to base any claim under

6  Civil Code section 52.1."); *City of Simi Valley v. Superior Court*, 111 Cal.App.4[th] 1077, 1085

7  (2003) (where the plaintiff's "federal constitutional claims are subject to a res judicata bar and

8  there is 'no conduct specified which constitutes a state constitutional violation, there is no

9  conduct upon which to base a claim for liability under 52.1'").

10   **D.    Declaratory and Injunctive Relief**

11   In his first and second claims, plaintiff seeks declaratory and injunctive relief based on an

12  alleged violation of 42 U.S.C. section 1983. Because plaintiff has not alleged a violation of

13  section 1983 for the reasons demonstrated above, his claims for declaratory and injunctive relief

14  based thereon must also be dismissed.

15   **IV.    CONCLUSION**

16   Because The Regents (as the IGS) is not subject to suit under any of the claims alleged,

17  and because plaintiff's claims against Robinson fail, defendants' motion to dismiss should be

18  granted in its entirety and plaintiff's lawsuit dismissed.

19

20  Dated:  January 18, 2008                         GORDON & REES LLP

21

22                                                                    By:

23                                                                    Nicole C. Harvat
                                                                      Attorneys for Defendants THE
24                                                                    REGENTS OF THE UNIVERSITY OF
                                                                      CALIFORNIA and NICK ROBINSON

25

26

27

28

PTS. & AUTH. I.S.O. DEFENDANTS' MOTION TO DISMISS – CASE NO. C07-05557 MJJ