```
MICHAEL A. LAURENSON (SBN: 190023)
NICOLE C. HARVAT (SBN: 200469)
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Defendants
THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA (erroneously sued as
INSTITUTE OF GOVERNMENTAL STUDIES
AT THE UNIVERSITY OF CALIFORNIA AT
BERKELEY, and NICK ROBINSON
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH GALIANO,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>INSTITUTE OF GOVERNMENTAL STUDIES AT THE UNIVERSITY OF CALIFORNIA AT BERKELEY, an unincorporated association, NICK ROBINSON, DOES 1-5, inclusive<br><br>　　　　　Defendants. | CASE NO. C07 05557 MJJ<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Accompanying Documents:<br>SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE<br><br>Date: February 26, 2008<br>Time: 9:30 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. Martin J. Jenkins |

## I.　INTRODUCTION

Plaintiff's assiduously annotated yet largely inapposite brief in opposition to defendants' motion fails to establish a constitutional right to speak in the IGS campus library reading room or that Nick Robinson's enforcement of the library's rational policy prohibiting direct complaints among patrons violated plaintiff's equal protection rights. Because no such clear right or violation has been made out, plaintiff could not have been retaliated against based thereon, and Robinson must enjoy qualified immunity. Finally, because none of the complained of conduct

involved threats, coercion or intimidation, no Bane Act claim has been made out. Accordingly, defendants' motion should be granted.

## II.    LEGAL ARGUMENT

### A.    The Proper Defendant Is The Regents of the University of California

Plaintiff seeks to avoid the various bars against suing The Regents (which he does not contest otherwise apply) by suing IGS. Plaintiff does not dispute, however, that IGS is an Organized Research Unit of UC Berkeley. *See* Plaintiff's Opposition ["Pl. Opp."] at 3-4. As such, IGS is subject to the *Administrative Policies and Procedures Concerning Organized Research Units* ("Admin. Policies"). Defendants' Supplemental Request for Judicial Notice ["Supp. RJN"], filed herewith, Exhibit 1. Pursuant to those policies and procedures, it is a fact that:

- IGS "is an academic unit the University has established to provide a supportive infrastructure for interdisciplinary research complementary to the academic goals of departments of instruction and research." *See* Supp. RJN, Exhibit 1, *Admin. Policies,* Section I.1.

- One of the functions of IGS is to "seek extramural research funds." *Ibid.*

- IGS is "responsible to the Chancellor or Chancellor's designee for administration, budget, space, personnel, and scholarship." *Id.* at Section I.4(a).

- IGS is "headed by a Director who is a tenured member of the faculty" who is "appointed by the Chancellor or Chancellor's designee after a nomination procedure on which the Chancellor and the Academic Senate have agreed." *Id.* at Section II.5a and 9a.

- Money to pay for IGS's "core administrative support, Director's stipend, staff salaries, supplies and expenses, equipment and facilities, and general assistance" comes from the campus budget. *Id.* at Section II.6a.

Plaintiff relies on *E.E.O.C. v. St. Francis Xavier Parochial School,* 77 F.Supp.2d 71 (D.D.C. 1991) in support of his argument that simply because IGS receives financial support from other sources ***in addition to*** the University and could "easily pay any judgment" (Pl. Opp. at 5), it can be sued in its own right. His reliance on *St. Francis Xavier* is misplaced. In that case, the EEOC sued a church and school for violations of the Americans with Disabilities Act. In holding that the church and school could not be sued in their own names, the court found

-2-

determinative that the church and school were a part of a larger body (a Parish and Archdiocese) and controlled by the policies of a larger body. *Id.* at 78. Here too, IGS – while certainly "a collection of persons working together for a common objective" – is also a part of a larger unit, UC Berkeley, and is organized and operates under the policies of that larger unit. IGS lacks the capacity to be sued, and therefore all claims against it should be dismissed.

Alternatively, of course, to the extent plaintiff is correct that IGS is an "unincorporated association," then his § 1983 claims fail as a matter of law because an "unincorporated association" is not a "person" within the meaning of the statute. *Lippoldt v. Cole,* 468 F.3d 1204, 1211-1216 (10th Cir. 2006)(finding no "congressional intent to include unincorporated associations within the ambit of the term "person" as set forth in 42 U.S.C. § 1983.")

**B.  Enforcing Silence in a University Library Does Not Violate Free Speech Rights**

It is undisputed that the speech at issue occurred in the IGS Library reading room, and there is no claim that the speech prohibitions plaintiff contests apply elsewhere. Claims like this one arising from speech on government property that is dedicated to specific, limited purposes are subject to "forum analysis," which looks to whether the challenged regulation is reasonable in light of those purposes. (Defendants' Motion to Dismiss ["Def. Motion"] at 4-6.) Plaintiff does not contest that the IGS Library is a limited public forum, but seeks to side-step the applicable analysis by citing to traditional free speech principles set forth in non-forum cases, *Houston v. Hill,* 482 U.S. 451, 461 and *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 508 (1969). These broad principles do not describe the permissible bounds of speech regulation in a limited public forum. "Obviously, a library patron cannot be permitted to engage in most traditional First Amendment activities in the library . . . ." *Kreimer v. Bureau of Police,* 958 F.2d 1242, 1256 (3d Cir. 1992).[1]

---

[1] See also *Kriemer*, 958 F.2d at 1263 ("[W]e disagree with the district court's statement that under [*Tinker*] the Library may only enact time, place and manner restrictions on activity that 'actually and materially interferes with the peaceful and orderly management of the public space.'").

Speech regulations impermissible in other settings are allowed in a limited public forum as long as they are "reasonable in light of the purpose served by the forum and are viewpoint neutral." *Faith Center Church Evangelistic v. Glover*, 480 F.3d 891, 910 (9th Cir. 2007). "Reasonableness analysis focuses on whether the limitation is consistent with preserving the property for the purpose to which it is dedicated"—a standard that requires consideration of the specific purposes of the forum at issue. *Id.*[2] The purpose of libraries, the Ninth Circuit has stated, is "the acquisition of knowledge through reading, writing and quiet contemplation." *Faith Center*, 480 F.3d at 910, quoting *Kreimer*, 958 F.2d at 1261. The IGS Library policies that plaintiff helpfully attaches to his Opposition confirm that purpose:

> The IGS Library strives to provide for its authorized users:
>
> 1. access to library materials or an ability to recall them according to library policy
>
> 2. journals, documents and books that are complete and unmarked
>
> 3. surroundings and library collections free from the problems caused by food, beverages, and other damaging substances
>
> 4. a library environment suitable for ***reading, study and activities in support of campus research and instructional programs.***"

(Pl. Opp., Ex. 7, emphasis added.) As in *Kreimer*, "the Library's rules make clear that the

---

[2] Thus plaintiff misplaces reliance on cases involving speech regulations in a public school board meeting, *Baca v. Moreno Valley Unified School Dist.*, 936 F.Supp. 719 (C.D. Cal. 1996), or dress restrictions that applied throughout a state courthouse complex, *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002)--fora with decidedly different purposes from a library reading room. *Sammartano* is distinguishable for another reason. That case involves a challenge to regulations that limited, not verbal expression, but the wearing of gang colors anywhere in a state courthouse complex. The Ninth Circuit recognized regulations designed to maintain "proper order and decorum" in the courtroom as "clearly legitimate" and suggested that rules or orders concerning permissible attire limited to courtrooms — as opposed to hallways and other offices — ***would*** be permissible. See 303 F.3d at 968-69. The speech involved here occurred, and the regulation challenged applies, exclusively in the library reading room. Like a courtroom, a library reading room is a space in which courts have repeatedly recognized the legitimacy of rules to maintain order and decorum. See, e.g., *Carey v. Brown*, 447 U.S. 455, 470-71 (1980) (government may enact regulations to maintain the "tranquility of . . . public and other buildings that require peace and quiet to carry out their functions, such as courts [and] libraries"); see generally, *Kreimer*, 958 F.2d at 1255-1256.

Library is open to the public only for specified purposes: reading, studying, using the Library materials. The Library has not opened its door for the exercise of all First Amendment activities." *Kreimer*, 958 F.2d at 1260. None of the Library's purposes involves creation of a forum for verbal communication. On the contrary, "the exercise of other oral and interactive First Amendment activities is antithetical to the nature of the Library." *Kreimer*, 958 F.2d at 1261; see also *id.* at 1263 ("interactive communication is not an important part of the intended use of the Library; indeed, it is contrary to its smooth functioning"). Therefore, it does not violate constitutional rights for libraries to enforce silence in a reading room. See, e.g., *Julian-Bey v. Crowley*, 2000 U.S. Dist. LEXIS 14071, *17 (W.D. Mich. 2000); *Kreimer*, 958 F.2d at 1262.[3] All of this is a complicated way to make a fairly straightforward point that should be obvious to anyone familiar with the stereotype of a "shushing" librarian: patrons have no right to talk in the library.

For this reason, plaintiff's claim of a constitutional right to tell other patrons to quiet down or to argue with library staff about library policies *in the reading room* must be flatly rejected. Plaintiff's right to communicate with other patrons or to register complaints with staff — even to call them a "son of a bitch" (as he apparently did, see Pl. Opp. at p.12:4-5) — ***outside the reading room*** has not been limited. But the reading room has not been opened to the public for conversation, and the Library need not tolerate talking there. *Kreimer*, 958 F.2d at 1262. Given the purpose for which the reading room is set aside, restrictions on addressing complaints to other patrons or to Library staff *in the reading room* — indeed restrictions on any talking at

---

[3] Plaintiff's claim that *Kreimer* involved only a challenge to nonexpressive activity (Pl. Opp. at 8) seriously misreads the case. Although the *Kreimer* court noted that "to a large extent" *some* of the challenged library regulations addressed non-expressive conduct, it did not decide the case on that basis. 958 F.2d at 1263 n. 24. The court expressly held that "interactive communication" and "interactive First Amendment activities" were not among the purposes for which the library had been opened to the public, and that the library could therefore regulate or prohibit those activities. See *id.* at 1261, 1263.

-5-
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

1 all — are reasonable and must be upheld.[4]

2 Finally, plaintiff argues at length that his ejection from the Library, and Robinson's later alleged call to the police when plaintiff returned, was "retaliation for exercise of free speech." (Pl. Opp. at 10-12.) But "a plaintiff must demonstrate that [he] has engaged in constitutional protected expression to establish a First Amendment retaliation claim." *Wasson v. Sonoma County Junior College*, 203 F.3d 659, 662 (9th Cir. 2000). Because plaintiff's conversation in the reading room was ***not*** protected, he has no First Amendment claim for retaliation.

### C. **Plaintiff Fails To Allege an Equal Protection Violation**

Plaintiff concedes that his equal protection claim is subject only to the rational basis test, not any heightened scrutiny. That test "accords a strong presumption of validity" and "is not a license for courts to judge the wisdom, fairness, or logic" of the challenged governmental action. *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1999) (declining to inquire whether challenged policy is "best means" for addressing concern under rational basis test). Indeed, the Ninth Circuit has acknowledged that "it is difficult to show that a law violates the equal protection clause" under this test, as the challenged governmental action "will survive rational basis review 'so long as it bears a rational relation to some legitimate end.'" *Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1185 (9th Cir. 2004) (citation omitted). Although it is possible that some regulations may be "so irrational or absurd on their face it is clear they can be motivated by nothing other than animus or prejudice," *id.*, such is not the case here.

Plaintiff's opposition does not cite a single case supporting his contention that it is irrational for library staff to ask patrons (or plaintiff in particular) to bring concerns about quiet in the library to staff rather than confront other patrons directly. Plaintiff also fails to meaningfully distinguish the Ninth Circuit (and other) cases cited by defendants. Although *Faith Ctr. Church Evangelistic Ministries v. Glover*, 480 F.3d 891 (9th Cir.), *cert. denied*, 128 S. Ct. 143 (2007) did not address an equal protection claim, it did hold that the defendant county "has a

---

[4] Plaintiff asserts that there was no actual disruption because the Library was empty. (Pl. Opp. at 12.) That is not the applicable standard. "[I]t seems obvious that thet Library may regulate conduct protected under the First Amendment which does not actually disrupt the Library." *Kreimer*, 958 F.2d at 1263.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

*legitimate interest* in screening applications and excluding meeting room activities that may interfere with the library's primary function as a sanctuary for reading, writing, and quiet contemplation." *Id.* at 911 (emphasis added). *Souders v. Lucero*, 196 F.3d 1040 (9th Cir. 1999) similarly, and explicitly, recognizes "a university's authority to impose reasonable regulations compatible with [its educational] mission upon the use of its campus facilities." *Id.* at 1044 (citation and internal quotation marks omitted). Indeed, *Souders* further held that the university has not only the "power" but the "duty to protect its students by imposing reasonable regulations on the conduct of those who come onto campus." *Id.* at 1045.[5] Plaintiff's attempt to limit the holding in *Freeman v. City of Santa Ana*, 68 F.3d 1176 (9th Cir. 1995) to an "actually promulgated standard" (Pl. Opp. at 14) is unfounded, especially in light of plaintiff's own exhibit showing that the Library Code of Conduct explicitly prohibited "[c]ausing a disturbance or engaging in *any* behavior which interferes with Library activities." (Pl. Opp. Ex. 7 (emphasis added).) Similarly, the rationale of *Julian-Bey v. Crowley*, 2000 U.S. Dist. LEXIS 14071, *17-18 (W.D. Mich. Sept. 21, 2000) is not controlled by its prison setting but rather by its *library* setting. Finally, plaintiff ignores entirely *Jercich v. County of Merced*, 2006 U.S. Dist. LEXIS 94030, *28 (E.D. Cal. Dec. 19, 2006), which dismissed a "selective enforcement" equal protection claim.

  Contrary to plaintiff's unsupported assertion, it is not at all irrational for library staff to be concerned that someone seeking quiet, even if well-intentioned, may well end up disrupting it even more. Anyone who has sat in a theater or library where the "shush-er" was more disruptive than the "shush-ee" could attest to that. Because Robinson's request to Plaintiff was reasonably related to a legitimate end, the equal protection claim should be dismissed.[6]

---

[5] *Souders* also contradicts Plaintiff's suggestion (Pl. Opp. at 14) that the University cannot limit non-student use of the library more stringently than use by students. *See* 196 F.3d at 1044 ("We have not held, for example, that a campus must make all of its facilities equally available to students and non-students alike....").

[6] As an independent ground for dismissal of the equal protection claim, plaintiff also has not pleaded that "similarly situated" patrons (as opposed to simply referring to all other patrons of the library) were treated differently.

-7-
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

### D. Defendant Nick Robinson is Entitled To Qualified Immunity

The parties agree on the correct legal standard for qualified immunity. However, plaintiff argues that Robinson is not entitled to it here because plaintiff's actions constituted not only free speech, but also protected criticism of a government official. He also argues that Robinson should have known that he was not justified in reporting plaintiff to police. The cases on which plaintiff relies provide no support for either argument.

Plaintiff cites to *City of Long Beach v. Bozek*, 31 Cal.3d 527, 534 (1982), where the court held that the constitutional right to petition the government for redress encompassed the right to file suit against the government, and therefore a city could not bring a malicious prosecution action against an individual who unsuccessfully sued the city. As plaintiff's conduct of talking back to Robinson involved neither petitioning the government for redress nor suing The Regents, *Bozek* is inapposite.

Plaintiff also cites to *Braxton v. Municipal Court*, 10 Cal.3d 138, 142-43 (1973), where the court considered "the constitutionality and proper construction of Penal Code section 626.4," which "authorizes the chief administrative officer of a state college or university, or a person designated by him, to issue an order summarily barring any person from a campus upon 'reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus.'" Since Robinson is not alleged to, nor does he claim to be, the chief administrative officer of UC Berkeley or his delegate, and because Robinson merely asked plaintiff to leave the IGS Library, and did not purport to bar him from the entire campus, whatever legal principles were established by *Braxton* would certainly not have given Robinson reason to believe his conduct was unlawful here.

Finally, plaintiff cites to a number of police officer reasonable suspicion cases which have no application here. *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) and *Martiszus v. Washington County*, 325 F.Supp.2d 1160, 1171 (D.Or. 2004) both held that police officers may not detain a suspect for boorish behavior in the absence of reasonable suspicion. While plaintiff's admission that he called Robinson a "son-of-a-bitch" certainly might qualify as boorish behavior, the case nonetheless has no application here because Robinson was not a

-8-

1 police officer, nor did he detain plaintiff. Also, *Morgan v. Woessner*, 997 F.2d 1244, 1260 (9th
2 Cir. 1993), nowhere holds that "[b]ad faith investigation of a seizure is a tort," as plaintiff
3 asserts, but, even if it did, neither that holding, nor the actual holding, which was that the
4 defendant police officers were not entitled to qualified immunity because they could not have
5 objectively believed that their detention of the suspect was supported by reasonable suspicion,
6 would have any application to Robinson, the Library Director.

### E. Plaintiff Fails to Allege Sufficiently Threatening Or Violent Conduct

Plaintiff argues that he has alleged three violations of the Bane Act – "loss of library use on July 16, 2007, unlawful detention and arrest on July 23, 2007, and loss of library use after July 23, 2007 (still continuing)" – but there is nothing threatening, intimidating, or coercive about the facts relating to these allegations.

First, plaintiff's initial expulsion from the library on July 16 is not alleged to have been threatening, intimidating or coercive. Robinson asked plaintiff to leave or the police would be called; plaintiff delivered an "appropriate epithet," then left. Plaintiff's Amended Complaint ["AC"] at ¶¶ 13-15. Just because the police might be involved does not *per se* imply an actionable threat. See *Burke v. County of Alameda*, 2008 U.S. Dist. LEXIS 1860 (N.D. Cal. Jan. 10, 2008) (alleged threat from police detective to charge plaintiff with crime did not support Bane Act claim). In fact, plaintiff does not allege that he encountered the police on this day.

Second, plaintiff's arrest on July 23 is not alleged to have been violent or involve the threat of violence. Moreover, it was plainly not "unlawful," as plaintiff alleges, as it was supported by an outstanding warrant. Moreover, even if plaintiff's arrest *did* involve violence or the threat thereof, it would not support a Bane Act claim ***against Robinson***, as Robinson merely reported plaintiff's presence to the police; the police arrested plaintiff based on the outstanding warrant, not on anything Robinson had said.

Moreover, there is nothing about plaintiff's "continuing" expulsion from the library – to the extent it exists outside of plaintiff's imagination – that involves violence or the threat of violence by Robinson. The amended complaint contains no allegations of any conduct by anyone at UC Berkeley following plaintiff's arrest other than Professor Citrin's letter to plaintiff

-9-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

confirming the existence of the library policy. AC at ¶ 18. Under no circumstances could that letter support a Bane Act claim against Robinson.

None of the cases cited by plaintiff support a contrary conclusion. According to the court in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004), "All [the court] decide[d] [t]here is that, in pursuing relief for those constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion." Consistent with that holding, defendants do not argue here that plaintiff must allege discriminatory intent, but rather argue that he has not alleged the requisite threats, intimidation or coercion. Plaintiff argues that "[t]here is also no requirement of physical touching" in the Bane Act, and defendants agree. However, there is a requirement of threats, intimidation or coercion (Civ. Code, § 52.1(a)), and that has not been alleged here.

Finally, plaintiff cites to a case from 1927 for the proposition that "a threat of arrest on a criminal charge in aid of the collection of a debt constitutes menace" as that term is used in the context of when a contract may be declared void under the Civil Code for want of consent. *Bridge v. Ruggles*, 202 Cal. 326, 330-31 (1927). Defendants certainly do not dispute this proposition, but find it irrelevant to the issues raised by the instant motion.

### III. CONCLUSION

For all of the foregoing reasons, and the reasons set forth in defendants' moving papers, this Court should grant defendants' motion to dismiss plaintiff's complaint without leave to amend.

Dated: February 12, 2008

GORDON & REES LLP

By: _____
Nicole C. Harvat
Attorneys for Defendants THE
REGENTS OF THE UNIVERSITY OF
CALIFORNIA and NICK ROBINSON