1  MICHAEL A. LAURENSON  (SBN:  190023)
   NICOLE C. HARVAT  (SBN:  200469)
2  GORDON & REES LLP
   Embarcadero Center West
3  275 Battery Street, Suite 2000
   San Francisco, CA  94111
4  Telephone:  (415) 986-5900
   Facsimile:  (415) 986-8054
5
   Attorneys for Defendants
6  THE REGENTS OF THE UNIVERSITY OF
   CALIFORNIA (erroneously sued as
7  INSTITUTE OF GOVERNMENTAL STUDIES
   AT THE UNIVERSITY OF CALIFORNIA AT
8  BERKELEY, and NICK ROBINSON
9
                  UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
12
   KEITH GALIANO,                          )   CASE NO. C07 05557 MJJ
13                                          )
                       Plaintiff,           )   **DEFENDANTS' SUPPLEMENTAL**
14                                          )   **REQUEST FOR JUDICIAL**
            vs.                             )   **NOTICE IN SUPPORT OF**
15                                          )   **DEFENDANTS' MOTION TO**
   INSTITUTE OF GOVERNMENTAL STUDIES AT )   **DISMISS (FRCP 12(b)(1) AND (6)**
16 THE UNIVERSITY OF CALIFORNIA AT       )
   BERKELEY, an unincorporated association, NICK )   Accompanying Documents:
17 ROBINSON, DOES 1-5, inclusive          )   DEFENDANTS' REPLY BRIEF
                                          )
18                     Defendants.          )   Date: February 28, 2008
                                          )   Time: 9:30 a.m.
19                                          )   Location: Courtroom 11, 19th Floor
                                          )   Judge: Hon. Martin J. Jenkins
20                                          )
                                          )
21                                          )
                                          )
22                                          )
                                          )
23 ─────────────────────────────────────

24        Pursuant to Federal Rule of Evidence 201, Defendants THE REGENTS OF THE

25 UNIVERSITY OF CALIFORNIA ("THE REGENTS") and NICK ROBINSON request that this

26 Court take judicial notice of the following document:

27        1.      Administrative Policies and Procedures Concerning Organized Research Units,

28 *Approved by the Council of the Vice Chancellor for Research, 4/21/99,* a true and correct copy of

                                    -1-

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA  94111*

1   which is attached hereto as Exhibit 1.  These policies and procedures can also be found online at

2   www.ucop.edu/research/policies/orupolicy.pdf.

3          "On a motion to dismiss ... a court may take judicial notice of facts outside the

4   pleadings."  (*Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("a

5   court may take judicial notice of 'records and reports of administrative bodies'")).  "[T]he

6   University is a statewide administrative agency ... ."  (*Ishimatsu v. Regents of the Univ. of*

7   *California*, 266 Cal.App.2d 854, 864 (1968)).  Courts routinely take judicial notice of the

8   policies and procedures of The Regents of the University of California, which have the force of

9   statute.  (*See Bockover v. Perko*, 28 Cal.App.4th 479, 486, fn. 5 (court properly took judicial

10  notice of the grievance procedure at demurrer stage); *accord Mendoza v. Regents of the*

11  *University of California*, 78 Cal.App.3d 168, 176, fn. 3 (1978); *Regents v. City of Santa Monica*,

12  77 Cal.App.3d 130, 135 (1978)).

13         Accordingly, this Court may take judicial notice of the document entitled Administrative

14  Policies and Procedures Concerning Organized Research Units, *Approved by the Council of the*

15  *Vice Chancellor for Research, 4/21/99,* attached hereto as Exhibit 1.

16

17  Dated:  February 12, 2008                          GORDON & REES LLP

18

19                                                      By:  _____

20                                                           Nicole C. Harvat
                                                             Attorneys for Defendants THE
21                                                           REGENTS OF THE UNIVERSITY OF
                                                             CALIFORNIA and NICK ROBINSON

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

UCR/1048612/5354197v.1

-2-

# EXHIBIT 1

ADMINISTRATIVE POLICIES AND PROCEDURES CONCERNING ORGANIZED
RESEARCH UNITS

*(Approved by the Council of Vice Chancellors for Research, 4/21/99)*


SECTION I.  DEFINITION AND PURPOSE OF ORUS

1.  An Organized Research Unit (ORU) is an academic unit the University has established to
provide a supportive infrastructure for interdisciplinary research complementary to the academic
goals of departments of instruction and research.  The functions of an ORU are to facilitate
research and research collaborations; disseminate research results through research conferences,
meetings and other activities; strengthen graduate and undergraduate education by providing
students with training opportunities and access to facilities; seek extramural research funds; and
carry out university and public service programs related to the ORU=s research expertise.  An
ORU may not offer formal courses for credit for students of the University or for the public unless
it has been specifically empowered to do so by the President after consultation with the Academic
Senate and the appropriate Chancellors.


2.  A Directory of Organized Research Units in the University of California is maintained and
periodically issued by the Office of the Vice Provost for Research.  Units ranging from special
libraries, hospitals, clinics, art galleries, and museums to departmental laboratories are not ORUs
unless they have been officially approved as such even though they may resemble ORUs in some
respects.  It is important to distinguish between formally established ORUs and other units of a
less formal character.  In the solicitation of extramural funds for a research project by a unit that
has not been granted ORU status, care should be taken not to use terminology nor make
representations which suggest that the proposing unit is in fact a University-approved ORU or is
about to become one. The designations enumerated in the following paragraphs shall not be used
as formal labels for units that are not ORUs, with the exception of Center, as noted.  If a unit is
likely to evolve into an ORU after a trial period of operation, the possibility should be mentioned
at a suitable stage in the planning; in such a case, the designation Center or Project is suitable.

DESIGNATION OF ORUs

3. Units included in the Directory of Organized Research Units normally carry one of the
designations enumerated and defined below.

Institute, Laboratory, and Center are used most often, but other titles may be employed in
particular situations.  An ORU that covers a broad research area may in turn contain other more
specialized units; for instance, an Institute may comprise several Centers, or a Station several
Facilities.  It is recognized that some long-established units have designations that do not
conform to the definitions that follow (some Centers are rather like Institutes in their activities)

and that some have widely known names such as <u>Bureau</u>, <u>Division</u>, <u>Foundation</u> or <u>Organization</u> that are not listed below but that cannot be conveniently changed. However, insofar as possible, designations of new units shall be taken from those defined below.

<u>Institute</u>: a major unit that coordinates and promotes faculty and student research on a continuing basis over an area so wide that it extends across department, school or college, and even campus boundaries. The unit may also engage in public service activities stemming from its research program, within the limits of its stated objectives.

<u>Laboratory</u>: a nondepartmental organization that establishes and maintains facilities for research in several departments, sometimes with the help of a full-time research staff appointed in accordance with the guidelines of Section 6a below. (A laboratory in which substantially all participating faculty members are from the same academic department is a departmental laboratory and is not an ORU.)

<u>Center</u>: a small unit, sometimes one of several forming an Institute, that furthers research in a designated field; or, a unit engaged primarily in providing research facilities for other units and departments.

<u>Non-ORU Center</u>. The term <u>Center</u> may be used for research units not formally constituted as ORUs upon approval by the Chancellor after consultation with the divisional Academic Senate. Before approval is granted for a Center that is not an ORU, the campus may stipulate terms and conditions such as a process for appropriate periodic review, including administration, programs, and budget; appointment of a director and advisory committee; an appropriate campus reporting relationship; and progress reports.

<u>Station</u>: a unit that provides physical facilities for interdepartmental research in a broad area (e.g., agriculture), sometimes housing other units and serving several campuses. The terms <u>Facility</u> or <u>Observatory</u> may be used to define units similar in function but with more narrow interests.

<u>LINES OF RESPONSIBILITY</u>

4. All ORUs are aggregated into two categories for purposes of administration and review.

(a) <u>ORU</u> (Single-campus Organized Research Unit): An Organized Research Unit serving a single campus is responsible to the Chancellor or Chancellor's designee for administration, budget, space, personnel, and scholarship.

(b) <u>MRU</u> (Multicampus Research Unit): This category includes (1) all units with facilities and personnel on two or more campuses or locations associated with them, and (2) all units with facilities at a single location on or near one of the campuses if the participation of faculty or staff from other campuses is so extensive as to give such a unit a Universitywide character.

MRUs are responsible to the President and report through a Chancellor or Chancellor's designee at the campus hosting the MRU's administrative headquarters; the President retains ultimate responsibility for matters of general policy and intercampus coordination and the Chancellor or Chancellor's designee oversees the MRU's administrative relationship with the campus. The Directors of the Agricultural Experiment Station, the Water Resources Center, the Kearney Foundation for Soil Science, and the Giannini Foundation for Agricultural Economics report to the Vice President--Agriculture and Natural Resources and insure that the Chancellors are kept informed of all impending substantial changes in these units and that effective administrative liaison with the Chancellors is maintained.

If an MRU has facilities and personnel on two or more campuses or locations associated with them, the Director may be aided by an Associate Director on each campus or location at which the unit is active. The portion of such an MRU on a particular campus has some of the attributes of an ORU, and the chief administrator of that part of the MRU (i.e., the Director or Associate Director) is responsible to the Chancellor or Chancellor's designee in such matters as personnel, services, and space. Each Associate Director is responsible to the Director for fulfillment of that portion of the MRU's mission that is carried out by the local branch.

## SECTION II. ADMINISTRATION, BUDGETARY SUPPORT, AND PERSONNEL

5a. ORUs. Each ORU is headed by a Director who is a tenured member of the faculty and who may receive an administrative stipend in addition to the faculty salary, except that a faculty member who already earns such a stipend through another appointment (e.g., as associate dean) shall not receive a second stipend. Such dual administrative responsibilities should be avoided. The Director is aided by a standing Advisory Committee, chaired by a faculty member other than the Director, which meets regularly and participates actively in setting the unit's goals and in critically evaluating its effectiveness on a continuing basis. Specifically, the Advisory Committee provides counsel to the Director on all matters pertaining to the unit, including budgetary matters and personnel. The Chair of the Advisory Committee, and as many other members as practical, should meet with five-year review committees (see below under Section 10a) and otherwise be available for consultation by the five-year review committee during the course of its review. The Advisory Committee is made up predominantly of faculty members, but may include some members from the professional research series and may have some members from outside the University. The Advisory Committee is appointed by the Chancellor or Chancellor's designee. The charge to the committee and its functions, membership, and reporting requirements are determined by the appointing officer but should include active participation in the planning and evaluation of the ORU's programs and activities.

5b. MRUs. All of the stipulations in Section 5a apply to MRUs, except that the members of the Advisory Committee to an MRU are appointed by the President or President's designee after consultation with the appropriate Chancellors or Chancellors' designees. An Advisory Committee may also be termed Steering or Executive Committee. MRUs may be aided by more than one committee acting in an advisory capacity; for example, MRUs may have an external Advisory

Committee and a UC Executive or Steering Committee. The external Advisory Committee is typically made up of individuals from governmental agencies, the private sector and the public nonprofit sector and provides guidance to the MRU on how it might address the needs and priorities of the external constituencies for which the activities of the MRU are especially important. The Chair and membership of the external Advisory Committee are appointed by the President or President's designee.

6a. ORUs. In recognition of the role played by ORUs in the educational process, provision is made in the campus budget for the unit's core administrative support, Director's stipend, staff salaries, supplies and expenses, equipment and facilities, and general assistance. The budgets of some units, notably those primarily serving other academic units (e.g., survey centers) and those engaged in professional activities of specific interest to the State of California (e.g., agriculture, industry, public administration, transportation), may also contain provisions for Professional Research (or Agronomist or Astronomer) positions of a more permanent nature than is ordinarily associated with a research project. All permanent positions--professional, technical, administrative, or clerical--may be established and filled, regardless of the availability of funds, only after specific review and authorization of the proposed positions and of the candidates for them in accordance with University policies and procedures.

6b. MRUs. All of the provisions of Section 6a apply to MRUs. The President and Chancellor or their designees will decide what portions of administrative support for the unit will derive from the campus or the Office of the President.

PROCEDURE FOR ESTABLISHMENT

7. ORUs, MRUs. To establish an ORU or MRU, the faculty members concerned submit a proposal stating the proposed unit=s goals and objectives. The proposal should describe what value and capabilities will be added by the new unit, and explain why they cannot be achieved within the existing campus structure. It should make clear how the ORU or MRU will be greater than the sum of its parts, for example, by fostering new intellectual collaborations, stimulating new sources of funding, furthering innovative and original research, or performing service and outreach to the public. The proposal should also contain the following information:

• Experience of the core faculty in interdisciplinary and multidisciplinary research collaborations.

• Research plan for the first year of operation and projections for the five years following.

• Budget estimates for the first year of operation, projections for the five years following, and anticipated sources of funding.

• Names of faculty members who have agreed in writing to participate in the unit's activities.

4

- Projections of numbers of faculty members and students, professional research appointees, and other personnel for the specified periods.

- Statement about immediate space needs and how they will be met for the first year and realistic projections of future space needs.

- Statement of other resource needs, such as capital equipment and library resources, and how they will be met for the first year, and realistic projections of future resource needs.

- Statement about anticipated benefits of the proposed unit to the teaching programs of the participating faculty members' departments.

- Statement specifying the appropriate administrative unit's commitment of funds, space, and other resources necessary for the successful operation of the proposed ORU or MRU. Actual or potential availability of extramural funds shall not serve as the sole basis for proposing, approving, or continuing an ORU or MRU.

The proposal should also list similar units that exist elsewhere, describe the relation of the proposed unit to similar units at other campuses of the University of California, and describe the contributions to the field that the proposed unit may be anticipated to make that are not made by existing units.

8a. ORUs. The proposal is submitted for review via any Dean directly affected by the proposed unit's personnel, space, and equipment demands to the Chancellor or Chancellor=s designee, who seeks the advice of the appropriate divisional Academic Senate committees. In cases of disagreement about whether to establish an ORU, the Chancellor or Chancellor's designee consults with the Chair of the Academic Senate, but the Chancellor retains final authority for the decision to approve establishment of a new ORU. Establishment of an ORU must carry with it a commitment of space and funding adequate to the mission of the unit. The Chancellor or Chancellor=s designee informs the Vice Provost for Research of the establishment of the ORU.

8b. MRUs. The proposal for an MRU originates at the campus which will host the administrative headquarters of the unit. The proposal is submitted to the appropriate administrative officer, normally the Vice Chancellor for Research. The Vice Chancellor for Research seeks advice from all appropriate divisional Academic Senate Committees and administrative committees. After campus review, the proposal is submitted to the Vice Provost for Research by the Chancellor or Chancellor's designee of the host campus. The Vice Provost for Research reviews the proposal and refers it to the Chancellors for comment. Campus review should include consultation with appropriate Divisional Senate committees. The Vice Provost for Research also refers the proposal to the Chair of the Academic Council for comment by The University Committee on Research Policy (UCORP), the University Committee on Planning and Budget (UCPB), and the Coordinating Committee on Graduate Affairs (CCGA). UCORP is the lead review committee. In

5

cases of disagreement about whether to establish an MRU, the Vice Provost for Research, Chair of the Academic Council, and Chancellor or Chancellor's designee of the host campus will establish a process of adjudication; however, the Vice Provost for Research retains final authority for the decision to recommend establishment of a new MRU to the Provost and President. After Presidential approval, the Provost informs the Chancellors and Chair of the Academic Council of the action. The establishment of an MRU must carry with it a commitment of space and funding adequate to the mission of the unit.

The procedures for establishing a new branch of an existing MRU are the same as those for establishing a new MRU.

## PROCEDURE FOR APPOINTING A DIRECTOR

9a.  ORUs.  The Director of an ORU is appointed by the Chancellor or Chancellor's designee after a nomination procedure on which the Chancellor and the Academic Senate have agreed. The founding Director of an ORU may be specified in the proposal to establish the ORU.  When the appointment of a new Director is for an existing unit, the Advisory Committee should be solicited for nominations.

9b.  MRUs.  The Director of an MRU is appointed by the Provost after consultation with the appropriate Chancellors and with the advice of a Search Committee appointed by the Vice Provost for Research.  Nominations for membership on the Search Committee are solicited by the Vice Provost for Research from the Chair of the Academic Council and the Chancellors. Normally, at least one member of the Advisory or Executive Committee of an existing MRU seeking a new Director serves on the Search Committee.

## PROCEDURE FOR FIVE-YEAR REVIEW

10a.  ORUs.  Periodic reviews of ORUs are necessary to ensure that the research being conducted under the units' auspices is of the highest possible quality and that campus resources are being allocated wisely and in line with campus priorities.  Each ORU should be reviewed at intervals of five years or less by an *ad hoc* review committee.  Reviews should address the ORU's original purpose, present functioning, research accomplishments (such as publications, grants, and new collaborations resulting from research conducted or sponsored by the unit), future plans, and continuing development to meet the needs of the field.  The review should assess the adequacy of space and other resources made available to the unit.  The review should look to the unit's success in meeting previously established objectives, planned changes in program objectives, and planned steps to achieve new objectives.  The review committee should be provided explicit budget information, including amounts and sources of all funds and expenditures, and the committee should assess whether the budget is adequate and appropriate to support the unit's mission.  Each *ad hoc* review committee should consider and make specific recommendations, if appropriate, for improvements in the mission, budget, administration, research focus, space and other resource requirements, and programs and activities of the unit.  It should also consider whether the unit

should merge with another similar unit, or be disestablished.

It is the responsibility of the Chancellor or Chancellors designee to initiate five-year (quinquennial) reviews for ORUs. The Vice Chancellor for Research, in consultation with the appropriate Senate Committee, should assure that five-year reviews are conducted at the proper five-year interval for each unit. The Chancellor or Chancellors designee appoints the review committee for an ORU from a slate nominated by the divisional Academic Senate. Review committees may have one or more members from another campus or from outside the University. The review committee's report should be provided to the Director for comment. Justification for continuation of an ORU must be documented carefully by the review committee.

The report is reviewed by the appropriate Academic Senate committee(s) and a decision concerning continuation of the unit and any needed changes is made by the Chancellor or Chancellor's designee upon consideration of the *ad hoc* and Senate committees' recommendations. The disestablishment of an ORU requires approval of the Chancellor, who forwards the information to the Vice Provost for Research (see Section 11a).

To permit the Vice Provost for Research to maintain an accurate portfolio of UC organized research, the Chancellor or Chancellor's designee should transmit an annual report to the Vice Provost for Research listing ORU establishments and disestablishments and a summary of five-year reviews of ORUs.

10b.  MRUs.  Periodic reviews of MRUs are necessary to ensure that the research being conducted under the units' auspices is of the highest possible quality and that University resources are being allocated wisely and in line with University priorities. Each MRU should be reviewed at intervals of five years or less by an *ad hoc* review committee, appointed by the Vice Provost for Research from a slate nominated by the Chair of the Academic Council and the Chancellors or Chancellors' designees. The Quinquennial Review Committee should include at least one member from outside the University and may include one or more Vice Chancellors for Research from within UC. The review should address all the criteria and areas identified with reference to ORUs in Section 10a. The Vice Provost for Research should assure that the quinquennial review of each MRU takes place at regular five year intervals. The review report is given to the Director for information. Each Quinquennial Review Committee should consider and make specific recommendations, if appropriate, for improvements in the mission, budget, administration, FTE or other resources, research focus, and programs and activities of the unit. It should also consider whether the unit should merge with another similar unit, or be disestablished. Justification for continuation of an MRU must be carefully documented by the review committee.

The Five-Year Review report is submitted to the Vice Provost for Research, who distributes it to the Academic Vice Chancellors for campus comment and the Chair of the Academic Council for comment by UCORP, UCPB, and CCGA. The MRU Director and the Chair of the Advisory and Executive Committees may also comment on the Five-Year Review Report. Based on the Five-Year Review Report and the comments on the Five-Year Review Report, the Vice Provost for

Research approves continuation of the unit, implements changes in the structure or functioning of the unit, or recommends disestablishment of the unit to the President.

PROCEDURE FOR DISESTABLISHMENT

11a. ORUs. The recommendation for disestablishing an ORU may follow a five-year review of the unit or other process of review established by the Chancellor or Chancellor's designee. After such campus review the Chancellor approves the request for disestablishment and the Chancellor or Chancellor̶s designee informs the Vice Provost for Research of the action.

11b. MRUs. The recommendation for disestablishing a MRU may follow a five-year review of the unit or other process of review established by the Chancellor of the host campus of the MRU or by the Vice Provost for Research. If the disestablishment initiates at the host campus, the Chancellor or Chancellor's designee submits the request for disestablishment to the Vice Provost for Research after appropriate campus administrative and Senate consultation and after consultation with the Advisory Committee of the MRU. The request for disestablishment is referred by the Vice Provost for Research to the Chancellors for comment. Campus review should include consultation with the appropriate Divisional Senate committees. The Vice Provost for Research also refers the proposal to the Chair of the Academic Council for comment by UCORP, UCPB and CCGA. If the disestablishment is initiated by the Vice Provost for Research, comment is requested from the Chancellors and from the Universitywide Academic Senate. The Provost recommends disestablishment of the MRU to the President. After Presidential approval, the Provost informs the Chancellors and Chair of the Academic Council of the action.

PHASE-OUT PERIOD

12. ORUs, MRUs. The phase-out period for an ORU or MRU which is to be disestablished should be sufficient to permit an orderly termination or transfer of contractual obligations. Normally, the phase-out period should be at most one full year after the end of the academic year in which the decision is made to disestablish the unit.

PROCEDURE FOR NAME CHANGE

13a. ORUs. The director of the ORU prepares a proposal describing the rationale for requesting a new name for the unit. The request for a new name usually reflects new directions in the interdisciplinary research sponsored by the unit, the expansion or addition of new knowledge or fields of research to the unit's mission, or the institutionalization of new methodologies of study. After review by the Senate and appropriate campus administrators, the Chancellor approves the name change of the ORU and informs the Vice Provost for Research of the action.

13b. MRUs. The Director of the MRU prepares a proposal for a change in name of the MRU, certifying that the change does not signal a fundamental change in the MRU nor require substantial new resources. The MRU Advisory Committee endorses the requested name change.

8

The proposal is reviewed by appropriate host campus administrators and Senate committees and by appropriate campus administrators and Senate committees of other participating campuses. The Director submits the proposal package to the Vice Provost for Research, who consults with the Chair of UCORP to secure his or her agreement that the name change is uncomplicated, and does not signal a fundamental change in the nature of the MRU nor require substantial new resources. After favorable review at the host campus and all participating campuses, the host campus Chancellor approves the name change and submits the full documentation to the Vice Provost for Research, who notifies the other campuses and the Chair of the Academic Council of the change in name.

REVIEW OF DIRECTORS

14a. ORUs. The effectiveness of each Director is reviewed near the end of an initial five-year term, or earlier, as appropriate; when possible, the Director is reviewed as part of the unit's quinquennial review. If the unit is to be continued, the decision whether to continue the appointment of the Director is made by the Chancellor or Chancellor's designee. Directorships of ORUs are limited to ten years of continuous tenure in all but extraordinary circumstances.

14b. MRUs. The effectiveness of each Director is reviewed near the end of an initial five-year term, or earlier, as appropriate; when possible, the Director is reviewed as part of the units quinquennial review. If the unit is to be continued, the decision whether to continue the appointment of the Director is made by the President or Presidents designee after consultation with the Vice Provost for Research. Directorships of MRUs are limited to ten years of continuous tenure in all but extraordinary circumstances.

ANNUAL REPORT

15a. ORUs. At the end of each academic year, each ORU should submit a report to the officer to whom it is responsible. The Chair of the Advisory Committee should be consulted in the preparation of the report. The report should contain the following:

- Names of graduate students and postdoctoral researchers directly contributing to the unit who (a) are on the unit's payroll, (b) participate--through assistantships, fellowships, or traineeships, or are otherwise involved in the unit's work.

- Names of faculty members actively engaged in the unit's research or its supervision.

- Extent of student and faculty participation from other campuses or universities.

- Numbers and FTE of professional, technical, administrative, and clerical personnel employed.

- List of publications issued by the unit, including books, journal articles, and reports and

9

reprints issued under its own covers, showing author, title, press run, and production costs.

- Sources and amounts (on an annual basis) of all support funds, including income from the sale of publications and from other services.

- Expenditures from all sources of support funds, distinguishing use of funds for administrative support, direct research, and other specified uses.

- Description and amount of space currently occupied.

- Any other information deemed relevant to the evaluation of a unit's effectiveness, including updated five-year projections of plans and resource requirements where feasible.

15b. <u>MRUs</u>. MRUs should submit annual reports to the Vice Provost for Research, with copies to the Chancellors of the host and participating campuses and to the Council on Research and the Universitywide Committee on Research Policy. The Chair of the Advisory Committee should be consulted in the preparation of the report. The annual report of an MRU should contain the same information as stipulated for ORUs in Section 15a.

<u>LIFE SPAN</u>

16a. <u>ORUs</u>. All ORUs must establish a rationale for continuance, in terms of scholarly or scientific merit and campus priorities, at fifteen year intervals. The first such fifteen-year (sunset) review for all units established prior to 1981 will take place between July 1, 1996 and June 30, 2001, but may extend beyond 2001 if necessary. Campuses have the flexibility of carrying out fifteen-year reviews at the same time as, and in place of, regularly scheduled five-year reviews or at other times established by the Chancellor or Chancellor's designee, in consultation with the Academic Senate. For example, campuses may choose to carry out simultaneous or collective fifteen-year reviews of all ORUs in the same broad disciplinary area. To begin a fifteen-year review, an ORU should develop a formal proposal for continued ORU status, support funds, and space in the context of current campus and University needs and resources. The proposal should state a persuasive rationale for the unit's continuation and should include all of the information required of proposals for ORU establishment (see Section 7). In addition, the proposal should describe the ORU's achievements over the past 15 years, the contributions the ORU has made to research, graduate and undergraduate education and public service, and the consequences if the ORU were not continued. The proposal and submitting unit are reviewed by an *ad hoc* fifteen-year review committee established by the Chancellor or Chancellor's designee after consultation with appropriate divisional Academic Senate committees. It is recommended that at least one member from outside the campus sit on the Fifteen-Year Review Committee. The report of the Fifteen-Year Review Committee is reviewed by appropriate campus senate committees and administrative officials. Approval for disestablishment of the ORU is made by the Chancellor.

10

The Chancellor informs the Vice Provost for Research of the action.

16b. <u>MRUs.</u> All MRUs must establish a rationale for continuance, in terms of scholarly or scientific merit and University priorities, at fifteen year intervals. The first such fifteen-year (sunset) review for MRUs should take place between June 30, 1996 and June 30, 2001, but may extend beyond 2001 as necessary. During this period of time, according to a schedule to be established by the Vice Provost for Research, each approved MRU which has at least 15 years of existence must submit to the Vice Provost for Research a formal proposal for continued MRU status, support funds, and space in the context of the University's needs and resources at the time. The proposal should state a persuasive rationale for the unit's continuation and should include all of the information required of proposals for MRU establishment (see Section 7). In addition, the proposal should describe the MRU=s achievements over the past 15 years, the contributions the MRU has made to research, graduate and undergraduate education, and public service, and the consequences if the MRU were not continued. Fifteen-year reviews of MRUs may be comparative; MRUs thus may be required to submit additional information required by the comparative nature of the fifteen-year review. A cluster of MRUs to be reviewed comparatively may be formed on the basis of related research interests, similar organizational structure, or other characteristics held in common.

A Universitywide *ad hoc* committee with representatives from the Council on Research and the Universitywide Committee on Research Policy and other such members as deemed necessary will constitute the review body for fifteen-year reviews of MRUs. The fifteen-year review committee should include at least one member from outside the University. The Fifteen-Year Review Committee will submit its report and recommendations to the Vice Provost for Research, who will distribute them to the Academic Vice Chancellors for campus comment and to the Academic Council for comment by UCORP, UCPB, and CCGA. UCORP is the lead review committee. The decision for disestablishment, continuation, or other change of an MRU following a fifteen-year review will be made by the President.

<u>EXCEPTIONS</u>

17. All exceptions to the above policies and procedures must be approved by the President.