UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

KEITH GALIANO,

    Plaintiff,

vs.

INSTITUTE OF GOVERNMENTAL STUDIES AT THE UNIVERSITY OF CALIFORNIA AT BERKELEY, an unincorporated association, NICK ROBINSON, DOES 1-5, inclusive,

    Defendants.

Case No. C07-05557 MJJ

[PROPOSED] ORDER DENYING MOTION TO DISMISS

## BACKGROUND

In this action pursuant to 42 U.S.C. § 1983 and the California Bane Act (Civil Code § 52.1), plaintiff challenges the constitutionality of a speech prohibition in a public library, and charges library officials with three distinct instances of retaliatory deprivation resulting from his attempt to question the subject policy. The defendants named are the Institute of Governmental Studies (IGS), which operates the library on the campus of the University of California at Berkeley, and Nick Robinson, the library Director.

The speech regulation at issue, which is unwritten and does not appear in the library's Rules of Conduct, flatly prohibits library patrons from speaking to each other directly on the subject of quiet, requiring them to filter such requests or complaints through library staff.

The action arises from defendants' invocation of this policy on July 16, 2007. Plaintiff alleges that he was a consistent user of the lightly used reading room with no history of conflict there, and that he was the only patron in the room on the afternoon of July 16 when a woman entered and began speaking excitedly to the desk librarian in an unusually loud voice. Plaintiff states that he politely asked — "Not quite so loud please?" — and that she graciously agreed, no disturbance of any kind ensuing. Nevertheless, Robinson, the library's Director, was summoned and appeared a few minutes later, informed plaintiff of the policy and told him, "we prefer that you go through staff."

Having never heard of such a rule and being surprised by it, plaintiff asked Robinson if it had any textual basis, but Robinson refused to answer. Plaintiff then began to ask Robinson if the supposed rule might actually have been specially ginned up for him but that before he could get these words out, Robinson ordered him to leave the library, threatening to call the police. Plaintiff alleges that he then threatened to sue and called Robinson a "son-of-a-bitch," and left as ordered.

It is undisputed that Plaintiff stayed away from the library for one full week, then returned for a few minutes on July 23, 2007, not being asked to leave. As plaintiff left the library building, he was detained for investigation by campus police officers, who told him that Robinson had reported him as a trespasser. The officers refused to let plaintiff leave the scene though he requested to do so. They discovered that the Alameda County Superior Court had issued a bench warrant for plaintiff's arrest for a failure to appear. They arrested plaintiff, and he then spent 28.75 hours in jail. Plaintiff alleges that the warrant had been issued erroneously, resulting from an administrative mix-up in which the subject citation did not appear in the court's system when he timely appeared at the court to pay it. The police report reflects that in reporting plaintiff as a trespasser, Robinson was referring to the incident of one week before, in which plaintiff had threatened to sue and, in Robinson's formulation, had been "abusive."

Plaintiff alleges that because of his vulnerability to further labeling as a trespasser by Robinson he never returned to the library after July 23, 2007, and has accordingly suffered exclusion from the IGS library ever since July 23, 2007.

## LEGAL STANDARD

On this motion to dismiss under Rule 12(b)(1) and (6), the court accepts as true all relevant facts pleaded, as well as reasonable inferences therefrom. *Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998). Defendants introduce extrinsic evidence in the form of web pages from university-related web sites, and plaintiff supports his Opposition by reference to similar documents. The authenticity of all of these materials, which are generated by the University of California, is undisputed, and therefore their consideration on the motion is proper. *Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006). The court is required to permit plaintiff to amend unless the deficiency alleged cannot possibly be cured. *Cook, Perkiss & Liehe v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

Subject Matter Jurisdiction

Although the Institute of Governmental Studies is the named entity defendant, the Regents of the University of California claim that IGS is sued erroneously, that IGS is The Regents or vice-versa, that the Regents are the only proper entity defendant, and that the court therefore lacks subject matter jurisdiction over claims other than those against Robinson personally because the Regents are an "arm of the state" entitled to immunity from suit in federal court under the Eleventh Amendment. Plaintiff responds that under either California or federal law IGS has capacity to be sued in its own name, as an "unincorporated association," with the result that the Regents need not be a party and no subject matter jurisdiction obstacle exists.

Plaintiff is correct that IGS is properly sued in its own name. Statements appearing on the IGS website make clear that the Regents provide only 24% of IGS' funding, that IGS is largely privately financed and directed, that it has an independent income-generating capacity and a private endowment of $5.7 million, and that its library, source of this dispute, is "independent of

the campus library system." There is also no indication that IGS itself fulfills any governmental function, central or otherwise. It therefore qualifies as an unincorporated association and may be sued in federal court under FRCP 17(b) and/or 17(b)(1). *Johnson v. Chilcott*, 599 F.Supp. 224, 230 (D.Colo. 1984); *E.E.O.C. v. St. Francis Xavier Parochial School*, 77 F.Supp.2d 71, 77 (D.D.C. 1999).

Constitutionality Of The IGS Speech Policy

Defendants claim that their across-the-board prohibition on inter-patron speech about quiet is justified because such speech might "lead to disputes." No showing is made of the actual existence of such a danger, but because requesting quiet in a library is pure expressive speech obviously appropriate to such a forum and the rule bans an entire category of content no matter how civilly delivered, it arrives in court with a nearly insurmountable presumption of unconstitutionality.

As a preliminary matter, defendants are incorrect that such a rule must be tested by a "reasonableness" standard. The case cited, *Kreimer v. Bureau of Police*, 958 F.2d 1242 (3rd Cir. 1992), does not stand for that proposition. In *Kreimer* such a standard was applied only to non-expressive conduct, not speech, such as staring or following, which by its very nature would be disturbing to other library patrons. *Kreimer* was mainly concerned with a library patron's offensive hygiene, obviously a far cry from the situation here. Even if a "reasonableness" standard could apply, a jury could find that such a rule is unreasonable, especially given that IGS apparently does not consider the matter serious enough to actually include the rule in its otherwise detailed "Rules of Conduct."

In *Sammartano v. First Judicial District Court,* 303 F.3d 959, 965 (9th Cir. 2002), state officials justified a rule that prohibited the wearing of clothing bearing the insignia of motorcycle clubs in a courthouse on the ground that some persons had reported feeling threatened by such garb. The court found this an insufficient justification for the rule, and reversed denial of a preliminary injunction against the rule. The plaintiffs' interest in *Sammartano*, involving only indirect or symbolic communication, was weaker than plaintiff's in pure speech here. In *Baca v. Moreno Valley Unified School Dist.*, 936 F.Supp. 719 (C.D. Cal. 1996), the court granted a

4

preliminary injunction against a school board rule prohibiting public criticism of school district officials at school board meetings. Defendants tried to justify such a flat prohibition, which the court described as "censorship," by pointing to the danger of defamation and the consequent need to protect public reputations. Assuming the potential for defamation existed, the court found it an insufficient interest to overcome rights of free speech.

"[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 508 (1969). In both *Sammartano* and *Baca*, at least "intermediate" scrutiny was applied, requiring the speech regulation to be justified by actual need to satisfy an important state interest, and at least at this stage, defendants have not made such a showing. The IGS library rule cannot be justified by the mere possibility that other library users will react hysterically to a request for quiet. Defendants in essence are asking the court to approve a "heckler's veto" on plaintiff's speech rights. Pure speech, even if obnoxious to many, is fully protected by the First Amendment and the California constitution and any rule that bans it regardless of circumstance is invalid.

The §1983 Claims

The two essential elements of a claim under § 1983 are (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that such conduct caused deprivation of a right, privilege or immunity secured by the Constitution. *Monroe v. Pape*, 365 U.S. 167 (1961). Retaliation for the exercise of protected speech is actionable under 42 U.S.C. § 1983. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1977). It appears to be undisputed that Robinson, both in ejecting plaintiff from the library and in causing him to be detained for investigation for trespassing a week later (which accomplished a further deprivation of library use) was attempting to shut down, in the former, and punish, in the latter, plaintiff's attempt to question him about the supposed ban on direct quiet requests in the library.

Defendants justify the ejection by suggesting that plaintiff should have written a letter rather than trying to question Robinson in the library. There is no authority for any such rule, and in any event, it appears undisputed that plaintiff made his request in an empty room, such that there was no real potential for disturbance. Defendants contend that plaintiff should not have attempted to challenge the rule inside the library, but plaintiff has alleged that he suggested going outside and that Robinson insisted on staying in the library. Defendants contend that in calling Robinson a "son-of-a-bitch," plaintiff departed the realm of protected speech. However, plaintiff has pleaded that he delivered that epithet only after being ejected, not before. Moreover, such a comparatively mild epithet should not be surprising from one unfairly booted from a library. Moreover, government officials, even the most petty, are required to endure at least modest abuse. *Duran v. City of Douglas*, 904 F.3d 1372, 1378 (9th Cir. 1990). Threatening to sue is absolutely privileged. *City of Long Beach v. Bozek*, 31 Cal. 3d 527, 535 (1982).

The same principles apply to the second incident. Plaintiff's abortive attempt to speak the week before, and his "abusive" speech after the ejection, were constitutionally protected. Under Cal. Penal Code § 626.6, an exclusion, even where lawful to avoid disruption of "the peaceful conduct of the activities of the ... facility," may not exceed one week absent special written notice, which did not occur here. When plaintiff returned to the IGS library on July 23, it was as a matter of right and he could not have been a "trespasser" simply for doing so. Robinson's report of trespassing therefore could not have been true, and was itself unlawful. It is not disputed that plaintiff's detention by the police followed directly from Robinson's report.

Equal Protection

Adverting to the fact that the IGS library's posted "Rules of Conduct" are silent about any rule against directly asking other persons for quiet, plaintiff alleges that the rule does not actually exist and that its invocation against him was therefore a denial of equal protection.

Defendants contend that this does not adequately allege an equal protection "class of one" claim. However, the very authority defendants cite, *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), holds that a "class of one" claim properly lies, even absent an allegation of membership in a recognized protected class, where plaintiff alleges he was intentionally treated

6

differently from others similarly situated, without rational basis. 528 U.S. at 564. Plaintiff asks — what could be less rational than applying a "no asking for quiet" rule only to older or already-graduated persons such as himself? The court agrees. Plaintiff's allegations meet the *Willowbrook* standard for pleading a "class of one" equal protection claim.

Qualified Immunity

Qualified immunity is not available for the retaliatory acts allegedly engaged in by Robinson, because in each instance the constitutional right retaliated against was well-established in July 2007.

The initial library ejection occurred when plaintiff tried to question Robinson about the existence of and basis for what has to be considered a novel restriction on speech. No matter how that questioning was phrased or conducted, it was protected speech under both the Federal and California constitutions. Plaintiff has alleged that he called Robinson a "son-of-a-bitch" only after being ejected, and this sequence is apparently not disputed, but in any event state officials are required to tolerate at least a moderate amount of abuse. See, *Duran v. City of Douglas*, 904 F.3d 1372, 1378 (9th Cir. 1990). This having been an empty room, there is no serious argument that disruption of the facility was actually threatened. Summary exclusions from public university facilities must be founded on conduct that actually threatens such disruption of operations. Penal Code § 626.6, *Braxton v. Municipal Court*, 10 Cal. 3d 138 (1973). This was well-established in July 2007.

The same is true of the trespassing report that resulted in plaintiff's detention and arrest one week later. The police report makes clear that the report was driven by Robinson's feeling that plaintiff had "abused" him the week before, especially by plaintiff's threat to sue. Such a threat is absolutely privileged. *City of Long Beach v. Bozek*. 31 Cal. 3d 527 (1982). Also well-established were that a citizen has a right to be free from unreasonable personal seizure, and that summary campus exclusions, even where otherwise justified, are limited to one week. Penal Code §626.6. Therefore plaintiff's return to the library on July 23, 2007 was as a matter of right, and he could not possibly have been considered a trespasser merely for appearing in the IGS library. All agents or employees of IGS should have known this.

The Bane Act Claims

Plaintiff has properly pleaded claims under California's Bane Act. The conduct complained of, i.e. ejection from the IGS library and subjection to needless personal seizure through bad faith report of trespassing, is not "speech alone," which would be disqualifying under the Act, but conduct. Defendants also contend that the claims fail for lack of any allegation of physical touching or "hate crime," but neither is required. *Jones v. Kmart Corp.*, 17 Cal.4th 329, 338 (1998); *O'Toole v. Superior Court*, 140 Cal.App.4th 488, 502 (2006).

The absolute privilege of Civil Code §47(b), applicable to reports initiating investigation of crime, in bad faith or not, does not apply in this case. It could not apply to Robinson's ejection of plaintiff from the IGS library because that did not involve institution of any official proceeding. It does not apply to Robinson's report of trespassing on July 23, 2007 because that act amounts to malicious prosecution, which is an exception to the privilege's coverage. *Hagberg v. California Federal Bank*, 32 Cal.4th 350, 355 (2004). Had it proceeded to completion, any "proceeding" kicked off by that report would necessarily have had to terminate in plaintiff's favor on the merits, because under the controlling statute it was legally impossible for plaintiff to have been a trespasser at the IGS library on July 23, 2007. The court also declines to apply the §47(b) privilege on the separate ground that the rights plaintiff seeks to vindicate in his Bane Act claims are constitutionally based, and cannot be subordinated to a mere statutory privilege. In *Hagberg, supra*, the California Supreme Court specifically noted that plaintiff in that case had not based her claim on the violation of rights of any similar status.

## DISPOSITION

The motion is DENIED in its entirety. In addition, defendants IGS and Robinson are preliminarily enjoined from (1) enforcing any flat prohibition on inter-patron speech about quiet in the IGS library; (2) prohibiting any speech that does not present an immediate and material threat to proper library functioning; (3) applying any rule to plaintiff that does not apply to other library users; (4) retaliating in any way against plaintiff in his future use of the library. Defendants are also directed to immediately restore plaintiff to enjoyment of the facilities that

[Proposed] Order Denying Motion to Dismiss
Case No. C07-05557 MJJ

were available to him in the IGS library as of July 16, 2007, including unrestricted internet access.

IT IS SO ORDERED.

                                                                       _____
Martin J. Jenkins
United States District Judge

[Proposed] Order Denying Motion to Dismiss
Case No. C07-05557 MJJ