THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEITH GALIANO,

        Plaintiff,

v.

INSTITUTE OF GOVERNMENTAL STUDIES AT THE UNIVERSITY OF CALIFORNIA AT BERKELEY, an unincorporated association, NICK ROBINSON, DOES 1-5, inclusive,

        Defendants.

Case No. 07-05557 SBA

**ORDER**

[Docket No. 6]

### REQUEST BEFORE THE COURT

Before the Court is Defendants' Motion to Dismiss for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted [Docket No. 6].[1] Plaintiff Keith Galiano sued the Institute of Governmental Studies ("IGS") at the University of California at Berkeley and Nick Robinson for violating 42 U.S.C. § 1983 and section 52.1 of the California Civil Code. In his Amended Complaint, Galiano alleges that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution and his rights under the California Constitution. (Am. Compl.) [Docket No. 4.] Galiano requests equitable relief and damages.

---

[1] Plaintiff has also filed a Revised Opposition to Defendants' Motion to Dismiss (Pl.'s Rev. Opp'n) [Docket No. 25]. Defendants object to the revised opposition on the ground that it constitutes supplementary material under Local Rule 7-3(d), for which prior Court approval is necessary. [Docket No. 26]. The Court agrees with the defendants. Although Plaintiff characterizes the document as a revised opposition, it is, in substance, a sur-reply, for which prior court approval is required. Plaintiff neither sought leave nor received leave from the Court to file his sur-reply. Accordingly, Pl.'s Rev. Opp'n [Docket No. 25] is stricken.

**BACKGROUND**

Defendants allege that The Board of Regents of the University of California, not IGS, is the appropriate legal entity for suit, and requests that the Court dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants also move the Court to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [Docket No. 6.]

Plaintiff Keith Galiano ("Galiano") is an alumnus of the University of California at Berkeley ("UC Berkeley") and a frequent user of the library at IGS, which is located on the UC Berkeley campus. On July 16, 2007, Galiano was engaged in reading and research at the IGS library when he was disturbed by a conversation between another patron and the librarian. Galiano asked the other patron to lower her voice. The library director, Defendant Nick Robinson, approached Galiano and informed him that the library preferred that patrons address concerns with other patrons to the library staff. Galiano, unaware of any such policy at the library, asked if the rule was posted anywhere. Galiano began to tell Robinson that the rule was unreasonable and illegitimate, and to express concern that he was being singled out. Robinson told Galiano that he had to leave. Galiano uttered an epithet and left the library.

**LEGAL STANDARDS**

**I.      Motion to Dismiss Pursuant to Rule 12(b)(1)**

A complaint must be dismissed if there is a "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction and generally have jurisdiction over an action only when that action either arises under federal law, or when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam). "'A plaintiff suing in a federal court must show in his pleading, affirmatively

and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.'" *Id.* (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)).

Subject matter jurisdiction must exist as of the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). If subject matter jurisdiction is lacking at the outset, the court has no power to do anything with the case except dismiss. *Id*. Thus, a 12(b)(1) motion should be decided before other motions, as they will become moot if dismissal is granted. *See* 5B C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2007). An action should not be dismissed for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is clear that the jurisdictional deficiency cannot be cured by amendment. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980).

A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations on their face or may be made as a "speaking motion" or "factual attack," attacking the subject matter jurisdiction based on extrinsic evidence apart from the pleadings. *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In resolving a "facial" attack, the Court limits its inquiry to the face of the complaint, taking the plaintiff's allegations as true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

In a factual attack on jurisdiction, however, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Safe Air*, 373 F.3d at 1039. Once the moving party has converted the motion to dismiss into a speaking motion, the burden of establishing subject matter jurisdiction shifts to the party opposing the motion. *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

However, if the jurisdictional issues and substantive claims are so intertwined that resolution

3

1 of the jurisdictional question is dependent on factual issues going to the merits, the court should
2 employ the standard applicable to a motion for summary judgement and grant the motion to dismiss
3 for lack of jurisdiction only if there is no genuine dispute as to the material jurisdictional facts.
4 *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987); *Roberts v. Corrothers*, 812 F.2d 1173,
5 1177 (9th Cir. 1987).

### II.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The rule of liberal construction before dismissing a complaint under 12(b)(6) is especially important in civil rights cases. *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000).

Courts generally do not look outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *See United States v. LSL Biotechs.*, 379 F.3d 672, 699 (9th Cir. 2004). A document is not considered outside the complaint if it is "incorporated by reference," *i.e.*, the complaint specifically refers to the document and its authenticity is not questioned. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997). A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute. *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint can not be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th

4

Cir. 2002).

## ANALYSIS

### I. Subject-Matter Jurisdiction

#### A. Sovereign Immunity

The defendants contend that IGS is a unit of UC Berkeley and that, therefore, the proper legal entity for suit is the Board of Regents of the University of California. (Defs.' P. & A. 2:1-3, 3:2-8)[Docket No. 7]. Defendants argue that this Court therefore does not have jurisdiction over the subject matter because the Board of Regents is an instrumentality of the state for purposes of the Eleventh Amendment, and Galiano's claims against it are barred by sovereign immunity. (Defs.' P. & A. 3:10-22). Galiano responds that IGS is independent of UC Berkeley and has the capacity to be sued under Federal Rule of Civil Procedure 17(b)(3) as an unincorporated association. (Pl.'s Rev. Opp'n 2:18-27, 3:9-7:3).

The Eleventh Amendment of the United States Constitution has been interpreted as a grant of sovereign immunity to the states against suit in federal court. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts. *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999). A question of sovereign immunity must be decided as a threshold issue prior to addressing the merits of the case. *Id.* It has long been established that UC Berkeley is an instrumentality of the state for purposes of the Eleventh Amendment. *Thompson v. Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. Cal. 1989) (citing *Hamilton v. Regents*, 293 U.S. 245 (1934) and *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)). Thus, at the outset, the Court must determine whether IGS is a unit of UC Berkeley, and therefore an arm of the state with sovereign immunity from suit in this Court. *Id.*.

Defendants have converted their motion to dismiss pursuant to Rule 12(b)(1) into a factual attack on jurisdiction by presenting evidence for the purpose of proving that IGS is a part of UC

Berkeley.[2] (Defs' Req. Jud. Not.)[Docket No. 12.] *Safe Air*, 373 F.3d at 1039. In response, Galiano has presented evidence attempting to prove IGS's independence. (Pl.'s Opp'n Exs. 1-8). However, IGS's independence from the Board of Regents is dispositive of both the issue of sovereign immunity as well as the "person" requirement of § 1983 because, as an arm of the state under the Eleventh Amendment, UC Berkeley is not deemed a "person" within the meaning of 42 U.S.C. § 1983. *Thompson*, 885 F.2d at 1443. Because resolution of the jurisdictional question is dependent on factual issues going to the merits of Galiano's § 1983 claim, the Court must apply the standard applicable to a motion for summary judgment in resolving the jurisdictional question. *Rosales*, 824 F.2d at 803. Accordingly, the Court may grant Defendants' Rule 12(b)(1) motion only if there is no genuine issue as to whether IGS is independent of the Board of Regents. *See id.*

The parties agree that IGS is an Organized Research Unit ("ORU") of UC Berkeley located on UC Berkeley's campus. (Defs.' P. & A. 3:4-8; Pl.'s Opp'n Ex. 1.) Defendants argue that, as an ORU, IGS is an academic unit established by UC Berkeley, similar to an academic department but dedicated to research. (Defs.' P. & A. 3:6-8.) The Administrative Policies and Procedures Concerning ORUs presented by the defendants provide the definition of an ORU as "an academic unit the University has established to provide a supportive infrastructure for interdisciplinary research complementary to the academic goals of departments of instruction and research." (Defs' Req. Jud. Not. Ex. 1, Section I.1.) The evidence, which defendants present, indicates that, as an ORU, IGS is responsible to the Chancellor of the University for "administration, budget, space, personnel, and scholarship," and that it is headed by a tenured member of the faculty and a board of directors, all of whom are appointed by the Chancellor. (*Id.* at Ex. 1, Sections I.4(a), II.5a, 9a.)

With regard to IGS's financial status, Defendants' evidence establishes that although one of

---

[2] Defendants also request that this Court take judicial notice of certain facts, located on two websites indicated in their Memorandum of Points & Authorities (3:1-8). Pursuant to Federal Rule of Evidence 201(b)(2), judicially noticed facts must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and pursuant to 201(d) judicial notice is mandatory only when the court is "supplied with the necessary information." The Court could not access the websites and has therefore not considered them.

its functions is to "seek extramural research funds," IGS receives money for its administrative support, various salaries and stipends, and other expenses from the campus budget. (*Id.* at Ex. 1, Sections I.1, II.6a.)

Galiano contends that IGS has a hybrid status because, he argues, it has a degree of financial independence. Galiano's evidence indicates that IGS receives 24% of its funding from the Board of Regents, generates some of its own funds, has an endowment worth almost $5.8 million, and has privately financed research projects. (*Id.* at 5:8-12, Exs. 3-5.)

Galiano relies on *E.E.O.C. v. St. Francis Xavier Parochial School*, 77 F.Supp. 2d 71 (D.D.C. 1991), arguing that an entity's independent financial ability to satisfy a judgment is the primary factor in determining whether it can be subject to suit individually. (Pl.'s Opp'n 5:5-25.) However, Galiano's reliance is misplaced. In *E.E.O.C.*, the court explicitly found that the "characteristic determinative" of whether an unincorporated division of a corporation was a separate legal entity was whether that division operated within the charter of a larger corporation, not whether it received private financial support or could satisfy a judgment against it. 77 F.Supp. 2d at 77.

Galiano's evidence also indicates that IGS has a stated mission and a National Advisory Council composed of private individuals responsible for "providing guidance and direction to advance the Institute's development and outreach efforts." (*Id.* at Exs. 1-2.) However, the same evidence indicates that IGS's mission is in service of UC Berkeley's goal to advance research and to complement the academic goals of the University. Such evidence also provides that "IGS serves as the University's primary center for advancing research" on certain matters. (*Id.* at Ex. 1.)

In sum, Defendants have established that many of IGS's essential expenses are paid by the University and that IGS must account for its financial activities annually to the University. Defendants' evidence also proves that IGS is headed by a tenured member of the UC Berkeley faculty and a board of directors, all of whom are appointed by the Chancellor. On the other hand, the facts that IGS has a mission statement, a board of advisors, receives substantial financial support from private donors, and has successfully built a sizable endowment are entirely consistent with

7

defendant's position that IGS is a unit of the University. Therefore such facts do not rebut defendant's argument or evidence.

Defendants have provided evidence establishing that IGS is a part of UC Berkeley. In response, Galiano has failed to introduce evidence to create a genuine issue as to this fact. Thus, the Court finds that IGS, as a part of UC Berkeley, is an arm of the state with sovereign immunity from suit in federal court. *Thompson*, 885 F.2d at 1443. Accordingly, the Court GRANTS Defendants' motion to dismiss for lack of subject matter jurisdiction as to IGS. Moreover, because the Court finds that IGS is a part of UC Berkeley, IGS is not a "person" for purposes of § 1983. *Thompson*, 885 F.2d at 1443. Thus, Galiano's claims against IGS are also dismissed for failure to state a claim.

Because the Court finds that there is no genuine issue of material fact as to whether IGS is a part of UC Berkeley, and therefore that IGS is immune from suit in federal court under the Eleventh Amendment, the Court also finds that granting Galiano leave to amend such claims would be futile. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. Cal. 1988); *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007). Accordingly, Galiano's claims against IGS are DISMISSED without leave to amend.

### B. Claims Against IGS's Director

A state's sovereign immunity from suit in federal court extends to suits, for monetary damages, against its officers in their official capacities. *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002). However, suits against state officials to enjoin them from continuing to enforce allegedly unconstitutional laws are not deemed to be against the state and are not barred. *Ex Parte Young*, 209 U.S. 123, 166 (1908). Furthermore, the Eleventh Amendment does not bar suits seeking damages against state officers acting in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

The complaint alleges that defendant Robinson violated Galiano's rights by enforcing an IGS policy while acting in his official capacity as Director of the IGS Library. Galiano seeks declaratory and injunctive relief on this claim. (Am. Compl. 3:14-15, 9:1-8.) Galiano also sues Robinson in his

individual capacity for damages.

Because the Eleventh Amendment does not bar claims for injunctive relief against state officials, the Court finds that it has jurisdiction over Galiano's claim for declaratory and injunctive relief against Robinson in his official capacity as well as his claim for damages against Robinson in his individual capacity.

## II.    Claims Under 42 U.S.C. § 1983

The complaint alleges that Robinson, acting under the color of state law, deprived Galiano of his Federal civil rights in violation of 42 U.S.C. § 1983.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. There are two essential elements to a § 1983 action: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 US 527, 535 (1981) (overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986)).

Defendants do not dispute that Galiano alleges facts meeting the first element of a § 1983 claim. (Defs.' P. & A. 2:7-13.) However, as explained below, the Court finds that Galiano has not satisfied the second element because he fails to allege that he was deprived of any rights, privileges, or immunities secured by the Constitution. *See Baker v. McCollan*, 443 US 137, 139 (1979); *Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986) ("in order to make a claim under § 1983, a plaintiff must allege the deprivation of a protected constitutional right.").

### A.    Free Speech Claim

Plaintiff alleges that his "request for quiet in the library and his attempt to question an alleged *ad hoc* rule barring [that request]" constitute constitutionally protected speech. He contends

9

that by enforcing a policy limiting that speech, Robinson violated his First Amendment rights. (Am. Compl. 2:8-11.)

In a challenge to the constitutional validity of a rule under the First Amendment, the Court must first determine whether a First Amendment right exists, for "if it [does] not, [it] need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

The First Amendment requires neither equal nor unlimited access to public places. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). The extent of one's rights and the scrutiny applied to limitations on those rights is different depending on the character of the property in question. *Id.*

In determining the level of scrutiny that applies to a governmental regulation of protected speech, the Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius*, 473 U.S. at 800. The question at this stage is not whether "asking for quiet is appropriate and traditional" to the forum of the library, as Galiano contends, but whether the library's limits on Galiano's right to free speech were appropriate considering the purpose of that forum.

### 1. The IGS Library is a limited public forum

Plaintiff alleges that the library is "for the most part a reading room" that is open to the public but nonetheless often empty. (Am. Compl. ¶ 12.) He also alleges that "at the same time [the library] is a place of conspicuous political speech" with occasional conversation. (*Id.*) Forum analysis divides government property into public fora (property, like public streets and parks, that by tradition has been devoted to assembly and debate), designated public fora (property that the government has intentionally dedicated to expressive conduct), and nonpublic fora (any public property that is not, either by tradition or designation, a forum for public communication). *Faith Ctr. Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 907 (9th Cir. 2007). The Ninth Circuit has also identified the 'limited public forum,' a sub-category of the designated public forum,

10

where the government opens a nonpublic forum but reserves access to it for only certain groups or categories of speech. *Id.* at 908 n.8. Defendants argue that the IGS Library is a limited public forum. (Defs.' P. & A. 5:13-6:8.) In *Faith Center*, the Ninth Circuit held that a library was a limited public forum because the government did not intend for the forum to be open for indiscriminate use. *Id*.

In the complaint, plaintiff has failed to allege that the state intended the library to be open to anything other than "reading and research." (Am. Compl. ¶ 13.) He also requests this Court to take judicial notice of the IGS Library Code of Conduct, which explicitly prohibits, among other things, "[c]ausing a disturbance or engaging in any behavior which interferes with Library activities."[3] (Pl.'s Opp'n Ex. 7.) Thus, the Court finds that the library is a limited public forum pursuant to *Faith Center*, 480 F.3d at 891.

### 2. The restraint on speech is reasonable given the library's purpose

Plaintiff alleges that the IGS library's unwritten rule "prohibiting library patrons from directly asking others for quiet in the library . . . is arbitrary, endows IGS officials with undue discretion, and is an unenforceable restraint on speech." (Am. Compl. ¶ 20.)

The Ninth Circuit has held that "[i]n a limited public forum, we review restrictions on speech that are viewpoint neutral for their reasonableness." *Faith Center,* 480 F.3d at 908 n.8. Relying on *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F.Supp 719 (C.D. Cal. 1996), Galiano argues that the applicable test is not reasonableness, but that restrictions on speech in a limited public forum are unconstitutional unless they serve a compelling governmental interest. (Pl.'s Opp'n 9:1-2, 19-24.) However, the court in *Baca* stated that a compelling governmental interest is necessary to uphold restrictions on speech in a *designated* public forum, not in a *limited* public forum, like the IGS library. 936 F.Supp at 730; *Faith Center*, 480 F.3d at 908 n.8 (the terms designated public forum

---

[3] The Court takes judicial notice of the Library Code of Conduct, which is undisputed by Defendants and located on IGS's public website. *See Intri-Plex Techs., Inc.*, 499 F.3d at 1052 (a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.)

11

1 and limited public forum are not interchangeable - a limited public forum is a sub-category of the
2 designated public forum.)

3 Plaintiff also alleges that "asking another for quiet in a library poses no threat of either
4 disruption of library operations or impairment of the rights of others." (Am. Compl. ¶ 21.) The
5 Ninth Circuit's reasonableness analysis "focuses on whether the limitation is consistent with
6 preserving the property for the purpose to which it is dedicated." *Faith Center,* 480 F.3d at 908
7 (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,* 196 F.3d 958, 967 (9th Cir. 1999)) In
8 *Faith Center*, the court reasoned that because a library's "primary function [is] as a sanctuary for
9 reading, writing, and quiet contemplation," it was reasonable for Contra Costa County to exclude
10 religious services from being conducted in a meeting room in the library. *Id.* at 911.

11 Given the purpose of the IGS Library as an environment suitable for reading and studying,
12 the Court finds that the library's policy of prohibiting patrons from asking other patrons for quiet, is
13 a reasonable restriction of speech under *Faith Center*.

14 Because the restriction of Galiano's speech in the library did not violate the First
15 Amendment, he has also failed to state a claim for retaliation for an exercise of free speech. *Wasson*
16 *v. Sonoma County Junior Coll.*, 203 F.3d 659, 662 (9th Cir. 2000) ("a plaintiff must demonstrate
17 that [he] has engaged in constitutionally protected expression to establish a First Amendment
18 retaliation claim."). Accordingly, Defendants' motion to dismiss Galiano's First Amendment claims
19 is GRANTED.

20 If, after dismissal for failure to state a legally cognizable claim, a district court determines
21 that the "allegation of other facts consistent with the challenged pleading could not possibly cure the
22 deficiency, then . . . dismissal without leave to amend is proper." *Albrecht v. Lund*, 845 F.2d 193,
23 195 (9th Cir. Cal. 1988); *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007). Here, Galiano
24 himself submits evidence with his complaint establishing that the forum at issue is a library intended
25 for reading, study, and research. As such, viewpoint natural restrictions of speech in the IGS library
26 are evaluated for reasonableness. In light of this, the Court finds that there are no facts consistent

12

with his complaint that Galiano could assert that would state a cognizable claim for violation of his First Amendment rights. *See Faith Center,* 480 F.3d at 911. Accordingly, Galiano's First Amendment claims are dismissed without leave to amend.

### B. Equal Protection Claim

Galiano alleges that "IGS' putative policy against direct inter-patron address in the library [the "IGS Rule"] does not apply to all persons equally, and no such rule has ever been invoked against any person other than plaintiff." (Am. Compl. ¶ 29.) He argues that his equal protection claim falls in the category of those brought by a "class of one." (Pl.'s Opp'n 13:14-21.)

A claim for equal protection will succeed when "brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A law alleged to violate the equal protection clause will survive rational basis review "if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996). Only if laws are "so irrational or absurd on their face [and] it is clear they can be motivated by nothing other than animus or prejudice" will they violate the equal protection clause under rational basis review. *Tucson Women's Clinic v. Eden*, 371 F.3d 1173, 1185 (9th Cir. 2004).

Assuming that Galiano is, as he alleges, the only person against whom the IGS Rule has been invoked, he still fails to state a 'class of one' claim. First, Galiano does not allege that his treatment was motivated by nothing other than animus or prejudice. But, even if he had, the Court finds that the IGS rule is rational because the rule is aimed at preventing patrons from causing disturbances or engaging in behavior that might interfere with library activities. As such, it advances a legitimate government interest, namely maintaining a library as "a sanctuary for reading, writing, and quiet contemplation." *Faith Center,* 480 F.3d at 908.

For these reasons, Galiano fails to state a claim that his right to equal protection under the

13

law was violated. Accordingly, defendant's motion to dismiss the equal protection claims is GRANTED.

Furthermore, because the IGS rule need only "advance a legitimate government interest, even if [it] seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous," *Romer*, 517 U.S. at 632, the Court finds Galiano could not allege other facts consistent with his present complaint that could possibly cure his equal protection claim. As such, the Court dismisses his equal protection claim without leave to amend. *Albrecht*, 845 F.2d at 195.

### C. Qualified Immunity

In suits seeking to impose individual liability on a government officer for actions taken under color of state law, defendants may assert a defense of qualified immunity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In determining whether an official is entitled to qualified immunity, a court must apply a two-prong test: (1) whether the facts alleged show that the official's conduct violated a constitutional right, and, if so, (2) whether the right was clearly established in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Unless or until the plaintiff has alleged facts sufficient to show deprivation of a constitutional right, the court need not inquire whether that right was clearly established at the time of the purported violation. *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Although the Court finds that no constitutional deprivation has occurred, it also finds that Robinson is entitled to qualified immunity as explained below.

Whether an official is protected by qualified immunity generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). In deciding whether the right allegedly violated by the public official was clearly established, courts must look at the particular factual circumstances surrounding the incident and ask whether a reasonable official would understand that what he is doing violates that right. *See id.* at 640.

Galiano asserts two claims against Robinson in his individual capacity: 1) that Robinson violated his First Amendment rights when he ejected him from the library after the inquiry about the

14

IGS rule; and 2) that Robinson violated his Fourth Amendment rights by contacting campus police to report Galiano as a trespasser. For the following reasons, Galiano fails to establish that Robinson's conduct in either instance was objectively legally unreasonable under clearly established rules.

First, Galiano contends that "the unlawfulness of Robinson's conduct was apparent" at the time Galiano was ejected from the library for inquiring about the IGS rule. (Pl.'s Opp'n 15:4-12.) He argues that his inquiry about the IGS rule constituted criticism of the government and that, as such, it was absolutely privileged speech, that unwritten rules such as the IGS rule are inherently inconsistent with First Amendment jurisprudence, and that a substantial and material disruption is necessary to justify exclusion from a public campus. However, none of the purported authority he cites actually supports these arguments. In fact, the cases upon which he relies show that the right to free speech in a library is subject to curtailment: *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 547 (1981) ("the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired"); *Braxton v. Mun. Court*, 10 Cal. 3d 138, 150 (1973) ("[s]peechmaking may be curtailed in a defined area . . . such as classrooms, libraries . . . and corridors adjoining those facilities - where the resulting noise is incompatible with the essential functioning of the campus.").

Galiano cites to *City of Long Beach v. Bozek*, 31 Cal.3d 527, 534 (1982), where the court held that the constitutional right to petition the government for redress encompassed the right to file suit against the government, and therefore a city could not bring a malicious prosecution action against an individual who unsuccessfully sued the city. As Galiano's conduct of talking back to Robinson involved neither petitioning the government for redress nor suing UC Berkeley, *Bozek* is inapposite.

Galiano also cites to *Braxton v. Municipal Court*, 10 Cal.3d 138, 142-43 (1973), where the court considered "the constitutionality and proper construction of Penal Code section 626.4," which "authorizes the chief administrative officer of a state college or university, or a person

15

1 designated by him, to issue an order summarily barring any person from a campus upon
2 reasonable cause to believe that such person has willfully disrupted the orderly operation of
3 such campus." Since Robinson is not alleged, nor does he claim, to be the chief
4 administrative officer of UC Berkeley or his delegate, and because Robinson merely asked
5 plaintiff to leave the IGS Library, and did not purport to bar him from the entire campus,
6 whatever legal principles were established by *Braxton* would certainly not have given Robinson
7 reason to believe his conduct was unlawful here.

8 Next, Galiano claims that it was a violation of his constitutional rights for Robinson to report
9 to the police that Galiano was trespassing. In support of this contention, he cites to a number of
10 police officer reasonable suspicion cases. But *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th
11 Cir. 1990) and *Martiszus v. Washington County*, 325 F.Supp.2d 1160, 1171 (D.Or. 2004) both held
12 that police officers may not detain a suspect for boorish behavior in the absence of reasonable
13 suspicion. However, these cases have no application here because Robinson was not a police officer,
14 nor did he detain plaintiff. *Morgan v. Woessner*, 997 F.2d 1244, 1260 (9th Cir. 1993), also cited by
15 Galiano, nowhere holds that "[b]ad faith investigation of a seizure is a tort," as Galiano asserts. But,
16 even if it did, neither that holding, nor the actual holding, which was that the defendant police
17 officers were not entitled to qualified immunity because they could not have objectively believed
18 that their detention of the suspect was supported by reasonable suspicion, would have any
19 application to Robinson, the Library Director.

20 Finally, contrary to Galiano's contentions, *Int'l Soc'y for Krishna*, 452 U.S. at 640, does not
21 indicate that an unwritten rule is inherently inconsistent with the First Amendment. Rather, in *Int'l
22 Soc'y for Krishna*, the Supreme Court held that a state fair rule did not violate the First and
23 Fourteenth Amendments to the United States Constitution insofar as it required The International
24 Society for Krishna Consciousness, Inc. to distribute and sell religious literature and to solicit
25 donations within the fairgrounds during the state fair only at an assigned location, even though
26 application of the requirement limited the religious practices of the organization. The Court held

16

that the state fair rule was a valid place and manner restriction. *Id.* at 654.

For these reasons, even assuming *arguendo* that Galiano's claims against Robinson, in his individual capacity, are cognizable, the Court finds that Robinson did not violate clearly established law and, therefore, his actions were objectively legally reasonable. *See Anderson*, 483 U.S. at 639-40. Accordingly, Robinson is entitled to qualified immunity for any claims against him in his individual capacity.

III.    Claims Under California Law

Galiano claims that defendants violated his rights under the United States and California constitutions by ejecting him from the IGS library, reporting him to the police, and conditioning his resumption of library use on adherence to the IGS rule. Galiano also claims that defendants violated California Civil Code, Section 52.1 (known as the Bane Act) in light of the alleged constitutional violations.

Section 52.1 of the California Civil Code provides in pertinent part:

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, [by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion], may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured

Cal Civ Code § 52.1.

The Court has already found that Galiano has failed to state a cognizable claim under the United States constitution against Robinson, and has dismissed such claims with prejudice. Additionally, the Court has found that IGS, as a part of UC Berkeley, is immune from suit in federal court, and is not a "person" under § 1983. As such, the Court has dismissed such claims for lack of subject matter jurisdiction, for failure to state a claim, and without leave to amend. Thus, Galiano's only remaining claims seek relief under California law.

Title 28, Section 1376 of the United States Code provides that "in any civil action of which

17

1  the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction
2  over all other claims that are so related to claims in the action within such original jurisdiction that
3  //
4  //
5  they form part of the same case or controversy . . . ." 28 U.S.C. § 1376(a).  However, "district
6  courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the
7  district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §
8  1376(c)(3); *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008); *Albingia*
9  *Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 939 (9th Cir. 2003) (generally, once all
10 federal claims have been dismissed, a district court should dismiss the state law claims").  The Court
11 has dismissed all of Galiano's claims over which it has original jurisdiction.  Accordingly, pursuant
12 to 28 U.S.C. § 1376(c)(3), the Court declines supplemental jurisdiction over Galiano's state law
13 claims and, therefore, such claims are dismissed for lack of subject matter jurisdiction.

### CONCLUSION

15 For the foregoing reasons, Defendants' Motion to Dismiss for lack of jurisdiction over the
16 subject matter and failure to state a claim upon which relief can be granted [Docket No. 6] is
17 GRANTED.  The action is DISMISSED without leave to amend.  The Clerk of Court is directed to
18 CLOSE the case file and any pending matters related to it.  All matters calendared in this matter and
19 all related matters are VACATED.
20 IT IS SO ORDERED.

Dated: 9/4/08                                           SAUNDRA BROWN ARMSTRONG
                                                        United States District Judge

18